

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-18-1995

# Rice v U S Dept ATF

Precedential or Non-Precedential:

Docket 94-1547

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Rice v U S Dept ATF" (1995). *1995 Decisions.* Paper 272.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/272

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>Column 1</u>        <u>Column 2</u>        <u>Column 3</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 94-1547

_____

PHILIP V. RICE,

Appellant

v.

UNITED STATES OF AMERICA, DEPARTMENT OF ALCOHOL,
TOBACCO AND FIREARMS,

Appellee

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 93-cv-06107)

_____

Argued:  October 25, 1994

PRESENT:  STAPLETON, HUTCHINSON* and GARTH, <u>Circuit</u> <u>Judges</u>

(Filed   October 18, 1995)

_____

Arthur L. Jenkins, Esquire                    (Argued)
325 DeKalb Street
P.O. Box 710
Norristown, PA  19404-0710
                Attorney for Appellant

Bernadette A. McKeon, Esquire                 (Argued)
Office of United States Attorney

1

Column 1          Column 2          Column 3

615 Chestnut Street
Philadelphia, PA  19106
         Attorney for Appellee

\*    This opinion was prepared by the Honorable William D.         Hutchinson and approved by the panel prior to his untimely       death.

Column 1        Column 2        Column 3

_____

OPINION OF THE COURT

_____

HUTCHINSON, Circuit Judge.

## I. Introduction

Appellant, Philip V. Rice ("Rice"), appeals an order of the United States District Court for the Eastern District of Pennsylvania dismissing his request for judicial review of appellee's, the Bureau of Alcohol, Tobacco and Firearms's ("BATF"), refusal to process his application for relief from a firearm disability. Rice claimed that BATF acted contrary to the Gun Control Act of 1968 ("Act"), the Second Amendment and the Fifth Amendment.

Section 922(g)(1) of the Act prohibits persons convicted of crimes punishable by imprisonment in excess of one year from owning or possessing firearms. Rice was so convicted. Section 925(c) authorizes BATF to lift this prohibition if, after an investigation, it is satisfied that the convict will not be likely to act in a manner dangerous to public safety and that the granting of such relief would not be contrary to the public interest. Section 925(c) gives BATF broad discretion, but its exercise of this discretion is subject to judicial review. The statute does not confine a district court to the administrative record, but authorizes the reviewing courts to receive additional evidence if necessary to avoid a "miscarriage of justice." Despite BATF's authority to grant relief from a firearm disability, Congress in recent years has prohibited it from

Column 1          Column 2          Column 3

spending appropriated funds to investigate such applications.

The district court granted BATF's motion for summary judgment on the merits of Rice's constitutional claims. It concluded, however, that it lacked subject matter jurisdiction over his statutory claim for judicial review of BATF's inability to complete the investigation that is a prerequisite to its action granting a convict's section 925(c) application. The court reasoned that judicial review was unavailable because BATF had not finally denied Rice's application, but simply lacked any present means to continue processing it.

While we will affirm the district court's decision to dismiss Rice's constitutional claims on their merits, we will reverse its order dismissing his section 925(c) claim and remand the case to the district court so that it can exercise its statutory discretion to decide whether BATF's failure to grant Rice the relief he seeks would be a miscarriage of justice. If it decides this question in the negative, it should dismiss Rice's request for judicial review on its merits. If it decides in the affirmative, Rice should be given an opportunity to present evidence relevant to section 925(c)'s standards for restoration of firearm privileges and thereafter the court should decide the merits of Rice's case on the completed record.

Column 1          Column 2          Column 3

## II. <u>Factual</u> <u>and</u> <u>Procedural</u> <u>Background</u>

Rice alleges these facts, all of which we assume are true at this stage of the case. In 1970, at age twenty, Rice pled guilty in a Pennsylvania state court to several related felonies involving stolen automobile parts. The state fined him and sentenced him to a term of probation.

The Act, 18 U.S.C.A. §§ 921-30 (West & Supp. 1995), as amended, prohibits a person convicted of "a crime punishable by imprisonment for a term exceeding one year" from possessing firearms.[1] 18 U.S.C.A. § 922(g). <u>See</u> <u>also</u> <u>United States</u> <u>v.</u> <u>Essig</u>, 10 F.3d 968 (3d Cir. 1993). 18 U.S.C.A. § 922(g)(1) (West Supp. 1995). It authorizes the Secretary of the Treasury to grant relief

> from the disabilities imposed by Federal laws with respect to the acquisition . . . or possession of firearms . . . if it is established to [the Secretary's] satisfaction that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest.

---

[1] Section 922(g)(1) provides in part:

> It shall be unlawful for any person--(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
>                         * * *
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Column 1              Column 2              Column 3

18 U.S.C.A. § 925(c) (West Supp. 1995).

Rice claims that he did not realize his felony convictions deprived him of his right to own and possess firearms. As a hunter and a gun collector, he continued to possess them.

The Secretary's decision to grant or deny relief pursuant to section 925(c) is subject to judicial review. In this respect section 925(c) provides that the district court is not limited to the administrative record, but can admit additional evidence to avoid "a miscarriage of justice."[2] 18 U.S.C.A. § 925(c). The Secretary of the Treasury has delegated his authority to grant relief to the Director of BATF. See 27 C.F.R. § 178.144.

To determine whether an applicant is entitled to relief, BATF "conducts a broad-based field investigation concentrating on [the] statutory criteria surrounding the applicant's disabling conviction and the applicant's record and reputation." Appendix ("App.") at 30. It also "interviews the applicant, the listed character references, employers, members of the community where the applicant lives, the applicant's probation officer and other local law enforcement officers," as well as other law enforcement records. Id.

---

[2] Section 925(c) states:

> Any person whose application for relief from disabilities is denied by the Secretary may file a petition with the United States district court for the district in which he resides for a judicial review of such denial. The court may in its discretion admit additional evidence where failure to do so would result in a miscarriage of justice.

Column 1          Column 2          Column 3

Rice claims that he applied for restoration of his firearms privileges when he first became aware of the effect his state court guilty pleas had on his right to possess firearms.  BATF's investigation revealed that Rice had purchased as many as fifty guns after his state conviction.  BATF did not confiscate any of Rice's guns, but allowed him to turn them over to his father for safekeeping.  Rice admitted these purchases and pled guilty to violating 18 U.S.C.A. § 922(g)(1).  On the present record, it is not clear to us whether Rice voluntarily disclosed these violations to BATF when he filed his first application for relief or instead merely conceded them after BATF uncovered them in the course of its investigation.

On February 27, 1992 the Governor of Pennsylvania pardoned Rice's 1970 convictions, and the state court subsequently expunged his state criminal record. In June 1992 Rice again applied to BATF for restoration of his firearms privileges. BATF began a second investigation.  It was unable to complete this investigation because Congress passed an appropriation bill for fiscal 1992-1993 (effective October 1992) that provided: "[N]one of the funds appropriated herein shall be available to investigate or act upon applications for relief from Federal firearms disabilities under 18 U.S.C. 925(c)."  Treasury, Postal Service, and General Government Appropriations Act, Pub. L. No. 102-393, 105 Stat. 1729, 1732 (1992).  Congress imposed a similar spending prohibition on BATF for fiscal years 1993-1994 and 1994-1995.  See Pub. L. No. 103-123, 107 Stat. 1226, 1228 (1993); Pub. L. No. 103-329, 108 Stat. 2382, 2385 (1994).  It is currently considering extending the spending prohibition for fiscal 1995-96. See H.R. 2020, 104th Cong., 1st Sess. (1995).  After the October 1992 prohibition,

Column 1                  Column 2                  Column 3

BATF informed Rice that it could not continue to process existing applications for relief from federal firearms disabilities and, therefore, that it was terminating further action on his application.

Rice then filed this action for judicial review of BATF's refusal to grant his June 1992 application. In his complaint he also claimed that BATF "is denying him his constitutional rights to bear arms under the Second Amendment and to due process and 'equal protection of the laws' under the Fifth Amendment." Rice v. United States Dept. of Alcohol, Tobacco and Firearms, 850 F. Supp. 306, 308 (E.D. Pa. 1994). BATF moved to dismiss Rice's complaint or, in the alternative, for summary judgment. BATF argued that Rice is not entitled to judicial review of its refusal to act on his section 925(c) application because it has never finally denied the application; but, rather, was forced to stop processing it because Congress prohibited the use of appropriated funds for this purpose. BATF also contended that Rice's constitutional claims failed as a matter of law. Accepting BATF's contention that its inability to act on Rice's application did not constitute a denial under section 925(c), the district court dismissed his request for judicial review for lack of subject matter jurisdiction, and granted BATF's motion for summary judgment on the merits of Rice's constitutional claims.

III. Discussion

This Court's appellate jurisdiction over Rice's challenge to the district court's final decision is based upon 28 U.S.C.A. § 1291 (West 1993). A district court's dismissal for lack of jurisdiction is subject to plenary review. Anthuis v. Colt Indus.

Column 1          Column 2                    Column 3

Operating Corp., 971 F.2d 999, 1002 (3d Cir. 1992); Mellon Bank (East) PSFS v.

Farino, 960 F.2d 1217, 1220-21 (3d Cir. 1992).

BATF's argument that the district court lacked jurisdiction over Rice's

claim is straightforward.  It begins with the proposition that district courts are courts of

limited jurisdiction and cannot disregard or evade the limits that Congress imposes on

them.  See Owens Equipment & Erection Co. v. Kroger, 437 U.S. 365 (1978).  BATF

then contends that section 925(c) is the exclusive avenue for relief from section

922(g)(1)'s prohibition against a convict's ownership or possession of firearms; that

judicial review is only available after it has denied an application for relief; that it has not

denied Rice's application; and that it cannot take any final action until the prohibited

investigation is completed.  The district court accepted BATF's argument, with a caveat.

It stated:

> It is doubtful whether the [B]ATF may avoid judicial review
> under any and all circumstances simply by failing to process
> an application.  In this instance, however, there is no
> evidence of bad faith or arbitrary or capricious conduct on
> the part of the agency.  There has been no undue delay.
> Congress has eliminated the funding needed by the [B]ATF
> to process [Rice's] application.  Consequently, the [B]ATF
> has suspended work on this and presumably other
> applications through no fault of its own.  [B]ATF's failure to
> process [Rice's] application cannot be deemed a denial
> under § 925(c).  This court has no jurisdiction, and [Rice] is
> not entitled to any relief from the court, as a result of
> Congress' elimination of [B]ATF appropriation for application
> review under § 925(c).

Rice, 850 F. Supp. at 308 (internal citations omitted); see also Moyer v. Secretary of

Treasury, 830 F. Supp. 516, 518 (W.D. Mo. 1993) (suspension of funding for

9

Column 1                    Column 2                    Column 3

investigations is not the functional equivalent of a denial).

We believe the district court erred in holding that Congress's elimination of appropriations for investigating and acting on section 925(c) applications deprived it of subject matter jurisdiction.[3] We believe the district court's order is more properly analyzed in terms of a failure to exhaust administrative remedies rather than a lack of subject matter jurisdiction.

Nevertheless, we have an independent threshold obligation to satisfy ourselves that the district court had subject matter jurisdiction. See Bender v. Williamsport Area School Dist., 475 U.S. 534 (1986). Therefore, before reaching the exhaustion issue, we will consider whether Congress's repeated prohibitions against the use of funds to investigate section 925(c) applications evidences a legislative intent to repeal this section and deprive the district court of subject matter jurisdiction over BATF's inaction.

We do not question Congress's exclusive power to appropriate money and establish the jurisdiction of inferior federal courts. See U.S. Const., Art. I, § 8 (appropriation power); U.S. Const., Art. III, § 1 ("The judicial Power of the United States, shall be vested in one Supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."); Lauf v. E.G. Shinner & Co., 303 U.S. 323, 330

---

[3] We have given careful consideration to Rice's constitutional claims that he "has been denied his Second Amendment Right to bear arms and to due process and to 'equal protection under the laws' because the Government has failed and refused to process his application . . . within a reasonable time," but conclude that they lack merit. Appellant's Brief at 12. Thus, we will affirm the district court's grant of summary judgment with respect to them. See Rice, 850 F. Supp. at 308-09.

<u>Column 1</u>          <u>Column 2</u>                    <u>Column 3</u>

(1938) ("There can be no question of the power of Congress thus to define and limit the jurisdiction of the inferior courts of the United States.") (footnote omitted); <u>Kline</u> v. <u>Burke Const. Co.</u>, 260 U.S. 226, 234 (1922) (Congress "may give, withhold or restrict . . . jurisdiction at its discretion"); <u>Sheldon</u> v. <u>Sill</u>, 49 U.S. 441, 449 (1850) ("the disposal of the judicial power . . . belongs to Congress").  It may also use appropriation acts to amend or repeal substantive legislation.  <u>See</u> <u>Robertson</u> v. <u>Seattle</u> <u>Audubon Soc'y</u>, 503 U.S. 429, 440 (1992); <u>United</u> <u>States</u> v. <u>Dickerson</u>, 310 U.S. 554, 555 (1940); <u>Director,</u> <u>OWCP</u> v. <u>Alabama</u> <u>By-Products</u> <u>Corp.</u>, 560 F.2d 710, 719 (5th Cir. 1977).  Furthermore, Congress can preclude judicial review of administrative action, subject to constitutional constraints.  <u>Bowen</u> <u>v.</u> <u>Michigan</u> <u>Academy</u> <u>of</u> <u>Family</u> <u>Physicians</u>, 476 U.S. 667, 672-73 (1986).  Nevertheless, before courts will hold that Congress has used an appropriation act to repeal substantive legislation or preclude judicial review of administrative action, the intention to do so must be clearly stated.  <u>See</u> <u>Robertson</u>, 503 U.S. at 440 (Congress "may amend substantive law in an appropriations statute, as long as it does so clearly."); <u>Johnson</u> v. <u>Robison</u>, 415 U.S. 361, 373-74 (1974) (courts require "clear and convincing evidence of congressional intent . . . before a statute will be construed to restrict access to judicial review") (internal quote omitted).

The appropriation acts presently before us fail to show a clear intent to repeal section 925(c) or to preclude judicial review of BATF's refusal to grant relief from firearms disabilities.  The relevant portion of the appropriation act for 1992-93 states only:

[N]one of the funds appropriated herein shall be available to

<u>Column 1</u>              <u>Column 2</u>                   <u>Column 3</u>

investigate or act upon applications for relief from Federal
firearms disabilities under 18 U.S.C. 925(c).

Pub. L. No. 102-393, 106 Stat. 1729, 1732 (1992).  The 1993-94 act merely extended

the previous year's prohibition in similar terms, as did the 1994-95 act.  All three limit

BATF's ability to spend appropriated funds to investigate section 925(c) applications,

but none of them expressly preclude a court from reviewing BATF's refusal to process

an application for relief.  Absent more explicit language, we are unwilling to interpret

these appropriation act provisions as repealing section 925(c), either in its entirety, or

specifically with respect to its provision for judicial review of administrative decisions

concerning a convict's application for restoration of his firearms privileges.  This

conclusion makes it unnecessary for us to explore any limits on Congress's broad

legislative powers to control appropriations.  <u>See</u> <u>Andrus</u> <u>v.</u> <u>Sierra</u> <u>Club</u>, 442 U.S. 347

(1979); <u>Tennessee</u> <u>Valley</u> <u>Auth.</u> <u>v.</u> <u>Hill</u>, 437 U.S. 153 (1978).

Having concluded that Congress has not repealed the statute or restricted

judicial review to deprive the district court of subject matter jurisdiction over Rice's

challenge, we next consider whether BATF's inability to process Rice's application is a

final denial.  As we have already stated, we believe this issue is most appropriately

analyzed in accord with the doctrine of exhaustion of administrative remedies.

Exhaustion, though often referred to as a question of jurisdiction, does not have the

same rigidity as true issues of subject matter jurisdiction.  A district court cannot

consider a case without subject matter jurisdiction, but failure to exhaust is not always

fatal.  <u>See</u> <u>Myers</u> <u>v.</u> <u>Bethlehem</u> <u>Shipbuilding</u> <u>Corp.</u>, 303 U.S. 41, 50-51 (1938)

<u>Column 1</u>          <u>Column 2</u>                    <u>Column 3</u>

(describing exhaustion as a "rule of judicial administration"); <u>see</u> <u>also</u> <u>McCarthy</u> <u>v.</u> <u>Madigan</u>, 503 U.S. 140 (1992).  As recently described by the Supreme Court, "[t]he doctrine of exhaustion of administrative remedies is one among related doctrines——including abstention, finality, and ripeness——that govern the timing of federal court decisionmaking."  <u>McCarthy</u>, 503 U.S. at 144.

The general rule concerning exhaustion is "'that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'"  <u>McKart</u> <u>v.</u> <u>United</u> <u>States</u>, 395 U.S. 185, 193 (1969) (quoting <u>Myers</u>, 303 U.S. at 501-51); <u>see</u> <u>also</u> <u>McCarthy</u>, 503 U.S. at 144-45 ("This Court long has acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts.") (citing <u>Myers</u>, 303 U.S. at 50-51 and n.9).  "Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency."  <u>McCarthy</u>, 503 U.S. at 145.  A significant inquiry in determining the applicability of the exhaustion doctrine is congressional intent and, "[w]here Congress specifically mandates, exhaustion is required."  <u>Id.</u> at 144.

To decide an exhaustion issue "federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion."  <u>Id.</u> at 146.  "Application of this balancing principal is 'intensely practical' because attention is directed to both the nature of the claim presented and the characteristics of the particular administrative procedure provided."  <u>Id.</u> (quotation omitted).  Thus, a court may decline "to require

Column 1          Column 2                    Column 3

exhaustion in some circumstances even where administrative and judicial interests would counsel otherwise." Id.; see also id. at 144 ("where Congress has not clearly required exhaustion, sound judicial discretion governs") (citations omitted); Coit Independence Joint Venture v. Federal Sav. and Loan Ins. Corp., 489 U.S. 561, 579 (1989) ("Where a statutory requirement of exhaustion is not explicit, 'courts are guided by congressional intent in determining whether application of the doctrine would be consistent with the statutory scheme.'") (quoting Patsy v. Florida Bd. of Regents, 457 U.S. 496, 502 n.4 (1982)).

In McCarthy the Supreme Court described "three broad sets of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion." Id. First, a court is less likely to apply exhaustion when it may cause "undue prejudice to subsequent assertion of a court action." McCarthy, 503 U.S. at 146-47. One way in which this "undue prejudice" may occur is by "an unreasonable or indefinite timeframe for administrative action." Id. at 147 (citations omitted). Second, a court may excuse exhaustion when there is "'some doubt as to whether the agency was empowered to grant effective relief.'" Id. (quoting Gibson v. Berryhill, 411 U.S. 564, 575 n.14 (1973)). Third, exhaustion may not be required when the agency "is shown to be biased or has otherwise predetermined the issue before it." Id. at 148 (citing Gibson, 411 U.S. at 575 n.14).

In Coit Independence, the Supreme Court addressed the first situation. In that case, the Court reviewed the adequacy of FSLIC proceedings to determine claims against savings and loan associations under FSLIC receivership. The claim in question was

Column 1          Column 2                    Column 3

retained for "further review" and held without action for over 13 months. <u>Coit</u>

<u>Independence</u>, 489 U.S. at 586. The Court held that "[t]he lack of a reasonable time

limit in the current administrative claims procedure render[ed] it inadequate" and

"[a]dministrative remedies that are inadequate need not be exhausted." <u>Id.</u> at 587; <u>see</u>

<u>also</u> <u>id.</u> ("Because the Bank Board's regulations do not place a reasonable time limit on

FSLIC's consideration of claims, Coit cannot be required to exhaust those procedures.")

(citations omitted); <u>Honig</u> <u>v.</u> <u>Doe</u>, 484 U.S. 305, 327 (1988) (parties "may bypass the

administrative process where exhaustion would be futile or inadequate") (citations

omitted); <u>Glover</u> <u>v.</u> <u>St.</u> <u>Louis-San</u> <u>Francisco</u> <u>Ry.</u>, 393 U.S. 324, 330 (1969) (applying one

"of the most obvious exceptions to the exhaustion requirement——the situation where

the effort to proceed formally with . . . administrative remedies would be wholly futile").

       In this case, the balancing test described in <u>McCarthy</u>, in conjunction with

the principles of <u>Coit</u> <u>Independence</u>, favors judicial waiver of the exhaustion doctrine.

Although the four month delay before passage of the appropriation act may have been

reasonable, the indefinite delay imposed after its passage is unreasonable. BATF

concedes that it cannot state a date on which it will consider Rice's application, nor can

it even state whether it will ever consider his application. In fact, after Congress

enacted the appropriation act BATF notified Rice that, even if Congress removed the

restrictions currently imposed, he "would need to submit an updated application" to

restore his federal firearms privileges. App. at 32. BATF also clearly stated that it had

concluded its participation in this process and it is not preparing any further record that

would help the court in resolving this dispute.

Column 1          Column 2          Column 3

Nevertheless, this case poses a special problem. The initial determination that Rice qualifies for relief from his firearm disability involves the exercise of BATF's discretion and relies on BATF's expertise——two factors that favor strict application of the exhaustion requirement. See McCarthy, 503 U.S. at 145 ("Exhaustion concerns apply with particular force when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise.") (citations omitted); McKart, 395 U.S. at 194 ("it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based"). Were it not for the express authority section 925(c) gives district courts to receive independent evidence when necessary to avoid a miscarriage of justice, we would be hesitant to excuse exhaustion where, as here, Congress has entrusted a decision to an agency under standards including one so broad as ensuring the public interest.

With that said, however, it seems clear to us that Congress did not intend to apply rigidly the doctrine of exhaustion of administrative remedies in this context because it gave the district courts discretion to create or supplement the administrative record when necessary to avoid a miscarriage of justice. What further part the agency should play in the ongoing court proceedings if the district court decides that it is necessary to receive independent evidence as to whether Rice has become fit for relief from his firearms disability is not presently before us. In that respect the record is not yet complete. We note, however, that the relevant provisions of the appropriation acts do not seem to preclude the agency from presenting its views on the propriety of

<u>Column 1</u>          <u>Column 2</u>          <u>Column 3</u>

granting Rice's application on the record created in a judicial forum.

Against this backdrop, we can think of few administrative remedies that would be more inadequate than the one presented by BATF.  Indeed, little to no benefit could be achieved by requiring further exhaustion.  Therefore, under all these circumstances, we hold that Rice need not exhaust administrative remedies to invoke the judicial review provision of section 925(c).  We thus will reverse the district court's order dismissing Rice's statutory claim for lack of jurisdiction.

On remand, the district court should determine in the exercise of its sound discretion whether the failure to admit Rice's evidence would result in a miscarriage of justice.  Following that initial decision, the district court should then decide, on the basis of all the evidence before it, whether Rice has met his burden of showing he "will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest."  <u>Id.</u>

Before ending our analysis, we believe that it is appropriate to comment on some other issues that are likely to arise in the course of the proceedings on remand.  Though Rice's ignorance of section 922(g)(1)'s prohibition cannot excuse his criminal violation of that section, it may be relevant to his fitness for relief under section 925(c).  Similarly, Rice's argument that his federal conviction for violation of section 922(g)(1) is a nullity fails.  <u>See</u> <u>United</u> <u>States</u> <u>v.</u> <u>MacGregor</u>, 617 F.2d 348 (3d Cir. 1980) (affirming a conviction for possession of a firearm where the predicate federal convictions were reversed on appeal after defendant's firearms conviction).  Nevertheless, this fact also may be relevant to Rice's claim for relief under section

Column 1                    Column 2                    Column 3

925(c).  Finally, we are reminded that the Supreme Court has held that the right to

possess a firearm after a disabling conviction is a privilege, not a right.  <u>Lewis</u> <u>v.</u> <u>United</u>

<u>States</u>, 445 U.S. 55 (1980).  Thus, Rice bears a heavy burden in his attempt to support

his statutory claim.

Column 1          Column 2          Column 3

## IV. Summary

We will summarily affirm the district court's grant of summary judgment in favor of BATF on Rice's constitutional claims.  With respect to Rice's statutory claim, however, we hold:  (1) the appropriation acts prohibiting BATF from expending funds to process Rice's section 925(c) application for relief do not evidence an intent to repeal or limit the district court's jurisdiction to review BATF's prolonged inaction on Rice's section 925(c) application; hence, the district court should not have dismissed Rice's petition for lack of subject matter jurisdiction; and (2) BATF's continuing inability to process Rice's section 925(c) application constitutes an undue delay excusing Rice from exhausting his administrative remedies that allows him to seek judicial review.

Accordingly, we will remand this case to the district court to determine in the exercise of its sound discretion whether the facts Rice alleges indicate a potential for a miscarriage of justice.  If so, it should then permit Rice to submit additional evidence of his fitness to have his firearms privileges restored and, thereafter, decide whether Rice's application satisfies section 925(c)'s standards for restoration of a convict's firearms privileges.

Column 1                Column 2                Column 3

## V.  Conclusion

The order of the district court dismissing this case is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

Circuit Judge