**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 8 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DAVID C. OWEN,

      Plaintiff-Appellant,

v.

JOHN W. MAGAW, Director, United
States of America Department of Alcohol,
Tobacco and Firearms, and BUREAU OF
ALCOHOL, TOBACCO AND
FIREARMS,

      Defendants-Appellees.

No. 96-3275

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 96-CV-4039)**

---

Jonathan L. Laurans, Shawnee Mission, Kansas, for Appellant.

Thomas M. Bondy, Attorney, Appellate Staff, Civil Division, Department of Justice, Washington, D.C. (Mark B. Stern, Attorney, Appellate Staff, Civil Division, Department of Justice, Washington, D.C.; Imelda M. Koett, Associate Chief Counsel, and David C. Lieberman, Attorney, Office of Chief Counsel, Bureau of Alcohol, Tobacco and Firearms, Washington, D.C., with him on the brief), for Appellees.

---

Before **KELLY, HOLLOWAY** and **HENRY,** Circuit Judges.

---

**HOLLOWAY,** Circuit Judge.

      This appeal presents the question of the district court's subject-matter jurisdiction over

this controversy involving the Department of Alcohol, Tobacco and Firearms' refusal to process a convicted felon's application for restoration of firearms privileges where that refusal is the result of Congress' denial of funds for the necessary background investigations and action on such applications. For the reasons that follow, we affirm the district court's dismissal of the case for lack of subject-matter jurisdiction.

## I

Plaintiff-Appellant David C. Owen was convicted in 1993 on two counts of filing false income tax returns in violation of 26 U.S.C. § 7206(1). App. at 2. He was sentenced on each conviction to a term of one year and one day, the sentences to be served concurrently, and his convictions were affirmed. United States v. Owen, 15 F.3d 1528 (10th Cir. 1994). As a result of these convictions, Owen is prohibited from owning or possessing firearms. See 18 U.S.C. § 922(g)(1). However federal law provides a method by which convicted felons can apply for restoration of firearms privileges:

> A person who is prohibited from possessing, shipping, transporting, or receiving firearms or ammunition may make application to the Secretary for relief from the disabilities imposed by Federal laws with respect to the acquisition, receipt, transfer, shipment, transportation, or possession of firearms, and the Secretary may grant such relief if it is established to his satisfaction that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest. Any person whose application for relief from disabilities is denied by the Secretary may file a petition with the United States district court for the district in which he resides for a judicial review of such denial. The court may in its discretion admit additional evidence where failure to do so would result in a miscarriage of justice.

18 U.S.C. § 925(c). The Secretary of the Treasury in turn delegated the authority to restore firearms privileges to the Director of the Bureau of Alcohol, Tobacco, and Firearms (BATF). See 27 C.F.R. § 178.144.

For each fiscal year after 1992 Congress has provided with respect to the Treasury Department appropriations that "none of the funds appropriated herein shall be available to investigate or act upon applications for relief from Federal firearms disabilities under 18 U.S.C. § 925(c)." See Treasury Dept. Appropriations Act, 1997, Pub. L. No. 104-208, 110 Stat. 3009, 3009-319 (1996); Treasury, Postal Service, and General Government Appropriations Acts 1993-1996, Pub. L. No. 104-52, 109 Stat. 468, 471 (1995); Pub. L. No. 103-329, 108 Stat. 2382, 2385 (1994); Pub. L. No. 103-123, 107 Stat. 1226, 1228 (1993); Pub. L. No. 102-393, 106 Stat. 1729, 1732 (1992).

Following his release from prison, Mr. Owen submitted an inquiry to the BATF concerning the application process for obtaining restoration of his firearms privileges through his congressional representative. App. at 3. By a letter dated January 11, 1995, appellee John W. Magaw, Director of the BATF, responded to the Congresswoman that due to the restrictions contained in the Treasury appropriations bill, the BATF could not take any administrative steps toward investigating Owen and determining whether he should be allowed to carry a firearm. Id. at 3-4, 8-9. Owen then filed this suit against Magaw and the BATF under 18 U.S.C. § 925(c) in the United States District Court for the District of Kansas, petitioning for review of the BATF's refusal to consider such an application by him.

App. at 1.  The defendants moved to dismiss the suit or for summary judgment for lack of subject-matter jurisdiction since the BATF had not denied an application by Owen but had taken the position that it was precluded from investigating or acting on such a request by the legislative provisions making unavailable appropriated funds for such purposes.  The district court agreed with the defendants and dismissed the case for lack of subject-matter jurisdiction, Owen v. Magaw, 936 F. Supp. 1568 (D. Kan. 1996), and Owen appealed.

**II**

We review de novo the district court's dismissal for lack of subject-matter jurisdiction. Urban ex rel. Urban v. Jefferson County School Dist. R-1, 89 F.3d 720, 724 (10th Cir. 1996). This appeal concerns whether the district court had jurisdiction to review the refusal of the BATF to investigate or act on an application for relief from the denial of firearms privileges to a convicted felon on the ground that Congress had, through appropriations statutes, provided that none of the funds appropriated thereby are available for investigating or acting on such applications.  Although this is an issue of first impression for us, the Third, Fifth and Ninth Circuits have faced the issue, disagreeing on the jurisdictional question.  See Rice v. Department of Alcohol, Tobacco and Firearms, 68 F.3d 702, 707 (3d Cir. 1995);  United States v. McGill, 74 F.3d 64, 67 (5th Cir.), cert. denied, 117 S. Ct. 77 (1996);  and Burtch v. United States Department of the Treasury, ___ F.3d ___, No. 96-35066 (9th Cir. Aug. 15, 1997) [1997 WL 464702].

In Rice, the Third Circuit held that federal courts do have subject-matter jurisdiction

4

to review the BATF's inaction regarding § 925(c) applications. Rice concluded that Congress' decision to deny funds for the BATF to investigate or act on such applications did not amount to a withdrawal of jurisdiction for judicial review of BATF action on such applications. The court applied the rule that Congress will not be held to have repealed substantive law through an appropriations statute unless its intention to do so is "clearly stated." Rice, 68 F.3d at 707 (citing Robertson v. Seattle Audubon Society, 503 U.S. 429, 440 (1992)). Noting that the appropriations statute in 1992-93 stated only that "[N]one of the funds appropriated herein shall be available to investigate or act upon applications for relief from Federal firearms disabilities under 18 U.S.C. § 925(c)," the court concluded that this language was not a clear statement of legislative intent to preclude judicial review. Rice, 68 F.3d at 707. The court also found support for its position in the provision of § 925(c) allowing a district court to "in its discretion admit additional evidence where failure to do so would result in a miscarriage of justice." This provision suggested to the court that exhaustion of administrative remedies could be excused, and hence the fact that the BATF had not acted on the application, as directed by Congress, would not preclude judicial review. Id. at 709.

In McGill, 74 F.3d at 67, the Fifth Circuit disagreed with the Third Circuit, and held instead that "Congress intended to suspend the relief provided by § 925(c)." The court relied heavily on the legislative history of § 925(c), which stated:

> Under the relief procedure, ATF officials are required to determine whether a convicted felon, including persons convicted of violent felonies or serious

5

drug offenses, can be entrusted with a firearm. After ATF agents spend many hours investigating a particular applicant[,] they must determine whether or not that applicant is still a danger to public safety. This is a very difficult and subjective task which could have devastating consequences for innocent citizens if the wrong decision is made. The Committee believes that the approximately 40 man-years spent annually to investigate and act upon these investigations and applications would be better utilized to crack down on violent crime. Therefore, the Committee has included language in the bill which prohibits the use of funds for ATF to investigate and act upon applications from [sic] relief from Federal firearms disabilities.

Id. at 67 (quoting S. Rep. No. 353, 102nd Cong., 2d Sess. 77 (1992)) (emphasis and alterations in original). The court concluded:

By withdrawing funds to the ATF to process these applications under these circumstances and with this explanation by the appropriations committee, it is clear to us that Congress intended to suspend the relief provided by § 925(c). We cannot conceive that Congress intended to transfer the burden and responsibility of investigating the applicant's fitness from the ATF to the federal courts, which do not have the manpower or expertise to investigate or evaluate these applications.

Id. The court also noted that in 1994 Congress restored funding for the purpose of investigating applications from corporations. In the court's view, this restoration would not have been necessary if "Congress thought that the courts were considering applications for relief under § 925(c)." Id. at 67-68.

After briefing and argument of the instant appeal, the Ninth Circuit's decision in Burtch came down. There an application was made in January 1995 by an individual formerly convicted of felonies between 1984 and 1987, seeking relief from firearms disabilities by the BATF pursuant to 18 U.S.C. § 925(c). The BATF responded that it was prohibited from acting on or investigating applications for such relief by the Treasury, Postal

6

Service and General Government Appropriations Act of 1994, Pub. L. No. 103-123, 107 Stat. 1226, 1228 (1993), and that Burtch should contact their office about such relief in case Congress removed the restriction imposed earlier. In June 1995 Burtch filed a verified petition for removal of the firearms disabilities in the federal district court. That court dismissed for lack of subject-matter jurisdiction and Burtch appealed.

The Ninth Circuit affirmed. It held that because there was no "denial" of the application, subject-matter jurisdiction was lacking in the district court. Id. 1997 WL 464702 *3. The Ninth Circuit thus agreed with the Fifth Circuit's result, but disagreed with its examination of legislative history because the Ninth Circuit said that the statute is clear on its face. Id. The Ninth Circuit also rejected, after rational basis scrutiny, a claim of denial of equal protection based on the fact that Congress had resumed funding for investigation of corporate applications for restoration of firearms privileges, while denying such funding for investigation of individual applications. Id.

In our case Owen admits that the Fifth Circuit in McGill did not reach an unreasonable result. See Aplt. Brief at 9. He argues, however, that the Third Circuit's opinion in Rice is more persuasive and urges us to follow Rice in deciding this appeal. His central argument is that the appropriations statutes are silent as to the role of the judiciary, and that there has been no clear statement of Congress' intent to repeal the courts' authority under § 925(c) to review the treatment by the BATF of applications for relief under the statute. Because implied repeals are disfavored, see Crawford Fitting Co. v. J.T. Gibbons,

Inc., 482 U.S. 437, 444-45 (1987), Owen contends that the appropriations statutes should not be read as having limited the role of the courts. However we have noted in the past that "[a]n appropriation act may be used to suspend or to modify prior Acts of Congress." Friends of the Earth v. Armstrong, 485 F.2d 1, 9 (10th Cir. 1973) (en banc). We believe that this is an instance where Congress has chosen to suspend the operation of the jurisdictional grant in § 925(c), at least with respect to the BATF, through the appropriations acts.

We disagree with Owen's argument, particularly his position that by leaving § 925(c) otherwise intact, Congress has transferred the task of determining whether a felon's firearms privileges should be restored from the BATF to the judiciary. Aplt. Brief at 5. In Rice, the Third Circuit directed that

> On remand, the district court should determine in the exercise of its sound discretion whether the failure to admit Rice's evidence would result in a miscarriage of justice. Following that initial decision, the district court should then decide, on the basis of all the evidence before it, whether Rice has met his burden of showing he "will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest."

68 F.3d at 709-10. Yet, § 925(c) clearly states that "the Secretary may grant such relief if it is established to his satisfaction that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." (Emphasis added). The only role for the judiciary is judicial review of a denial of relief under § 925(c) to restore firearms privileges. Under the procedure

8

announced in Rice, it would be the district courts that would make the determination whether the applicant deserves to have his or her firearms privileges restored.

We do not believe that such a result is indicated by the appropriations statutes, particularly in light of the legislative history relied on by the Fifth Circuit.[1] In United States v. Dickerson, 310 U.S. 554 (1940), the Court was faced with an analogous situation where Congress had passed a series of appropriations statutes suspending a reenlistment allowance for military personnel. However, the most recent appropriation statute used language different from that in the previous legislation. The Court acknowledged that "[t]he adoption . . . of different terminology might in other circumstances indicate an intent to change the

---

[1]We agree with the Fifth Circuit that we should consider the light that the legislative history sheds on the question and do not follow the Ninth Circuit's view that the history should be disregarded because the court felt the statute "is clear on its face . . . ." Burtch, 1997 WL 464702 *3. We are convinced that we should weigh the guidance given by the legislative history here. We have noted that "[t]he language of the statute must be the primary source of any interpretation and when that language is not ambiguous, it is conclusive 'absent a clearly expressed legislative intent to the contrary. Consumer Product Safety Commission v. GTE Sylvania, Inc., 447 U.S. 102, 108 . . . (1980).'" Miller v. Commissioner, 836 F.2d 1274, 1283 (10th Cir. 1988). Miller also noted that "[t]he Supreme Court has instructed us that the legislative history is not to be ignored even though we feel that the 'legislative intent is clearly manifested in the language of the statute itself.' Train v. Colorado Public Interest Research Group, 426 U.S. 1, 9-10 . . . (1976)." Id. at 1282. In State of Utah v. Babbitt, 53 F.3d 1145, 1148 (10th Cir. 1995), we also pointed to the Supreme Court's statement in Train that

"When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.'" (quoting United States v. American Trucking Ass'ns, 310 U.S. 534, 543-44 (1940).

Train, 426 U.S. at 10.

object of the legislation." Id. at 561. However, there was legislative history stating that the purpose of the bill was "to carry the same limitation that has been carried for years in the appropriation bills." Id. at 557 (quoting 81 Cong. Rec. 4426). The Court noted that "the drawing of such an inference [of changing the object of the legislation] is a workable rule of construction, not an infallible guide to legislative intent, and cannot overcome more persuasive evidence where, as here, it exists." Id. at 561.

As Congress noted, determining whether a particular felon should have his or her firearms privileges restored "is a very difficult and subjective task which could have devastating consequences for innocent citizens if the wrong decision is made." McGill, 74 F.3d at 67. To infer that Congress intended to transfer this important and subjective task to the courts simply flies in the face of Congress' statements. The BATF has the requisite manpower and expertise for making this determination, while the courts do not. Id.

We hold that in light of the absence of a denial by the BATF of an application by Owen for relief pursuant to 18 U.S.C. § 925(c), the district court lacked subject-matter jurisdiction and properly dismissed. Accordingly the judgment is **AFFIRMED**.