

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-26-2000

# Palma v. Dept of ATF

Precedential or Non-Precedential:

Docket 99-1503

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Palma v. Dept of ATF" (2000). *2000 Decisions.* Paper 205.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/205

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 26, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-1503

JEROME E. PALMA

v.

UNITED STATES OF AMERICA, DEPARTMENT
OF ALCOHOL, TOBACCO AND FIREARMS,

        Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
No. Misc. A. 98-mc-00209
District Judge: Hon. Marvin Katz

Argued: March 13, 2000

Before: McKEE and RENDELL, Circuit Judges,
and ROSENN, Senior Circuit Judge

(Opinion Filed: September 26, 2000)

RICHARD MENTZINGER, JR., ESQ.
Assistant U. S. Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
MARK B. STERN, ESQ.
THOMAS M. BONDY, ESQ. (Argued)
Attorneys, Appellate Staff
Civil Division, Room 9548
Department of Justice
601 "D" Street, N. W.
Washington, DC 20520

OF COUNSEL:
IMELDA M. KEOTT, ESQ.
Associate Chief Counsel
DAVID C. LIEBERMAN, ESQ.
Attorney
Office of Chief Counsel
Bureau of Alcohol, Tobacco and
Firearms
Washington, DC 20226
Attorneys for Appellant

STANFORD SHMUKLER, ESQ.
  (Argued)
Suite 1915
1515 Market Street
Philadelphia, PA 19102
Attorney for Appellee

OPINION OF THE COURT

McKEE, Circuit Judge.

The Bureau of Alcohol, Tobacco and Firearms ("ATF ") appeals the district court's order restoring firearms privileges to Jerome E. Palma. Palma had previously pled guilty to two counts of making false statements on a federal income tax return in violation of 26 U. S. C. S 7206(1), and was thereby precluded from owning or possessingfirearms under 18 U. S. C. S 922(g)(1) because he was a convicted

2

felon. We hold that Palma did not make the necessary showing under 18 U.S.C. S 925(c) to obtain relief from that disability, and we will therefore reverse the district court's order based upon our decision in Rice v. United States, 68 F.3d 702 (3d Cir. 1995).

I.

Palma was formerly a marketing director for various casinos in Atlantic City, New Jersey. While employed in that capacity he gave favorable treatment to various entities that were then doing business with the casinos in return for payoffs that totaled more than $100,000. Palma did not report any of the proceeds from those payoffs on his federal income tax returns.

On December 10, 1987, Palma pled guilty to two counts of making false statements on his income tax return, a felony. The district court suspended his sentence, placed him on five years probation, and ordered him to pay a fine of $10,000. It is undisputed that Palma successfully completed all terms and conditions of his sentence, and that he was granted early discharge from his probation. It is also undisputed that Palma has not had any adverse contact with law enforcement since successfully completing his sentence. Until three years ago, Palma was employed by Palma/Lazar Associates as a real estate appraiser. In 1997, he started his own real estate appraisal business, ProData Services. He claims that his "need" to carry a gun relates to his real estate appraisal business.

II.

Under the Gun Control Act of 1968, persons convicted of crimes punishable by a term of imprisonment in excess of one year are prohibited from possessing, transporting, or receiving firearms. 18 U. S. C. S 922(g)(1). However, the Gun Control Act also authorizes the Secretary of the Treasury to lift the firearms disability imposed under S 922(g)(1) if "it is established to [the Secretary's] satisfaction that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner

3

dangerous to the public safety and that the granting of the relief would not be contrary to the public interest." 18 U. S. C. S 925(c). The Secretary has delegated the authority to grant relief from the firearms disability to the Director of the ATF. 27 C. F. R. S 178.144(b), (d).

The Act further provides that any "person whose application for relief from disabilities is denied by the Secretary may file a petition with the United States district court for the district in which he resides for a judicial review of such denial." 18 U. S. C. S 925(c). When reviewing a denial of relief from the disability, the district court "may in its discretion admit additional evidence where failure to do so would result in a miscarriage of justice." Id.

Prior to 1992, when a convicted felon sought relief from the firearms disability, the ATF "conduct[ed] a broad-based field investigation concentrating on [the] statutory criteria surrounding the applicant's disabling conviction and the applicant's record and reputation." Rice v. United States, 68 F.3d at 705 (citation omitted). The ATF "interview[ed] the applicant, the listed character references, employers, members of the community where the applicant live[d], the applicant's probation officer and other local law enforcement officers, [and consulted] other law enforcement records," Id. (citation and internal quotations omitted), so that it could properly act upon a petition to reinstate a convicted felon's firearms privileges.

However, in each of the annual ATF appropriations bills passed since 1992, including the bill for FY 2000, Congress expressly prohibited the ATF from using any appropriated funds to investigate or act upon applications for relief under S 925(c). The following language was placed in each of those appropriations bills: "None of the funds appropriated herein shall be available to investigate or act upon applications for relief from Federal firearms disabilities under 18 U. S. C. S 925(c)." Pub. L. No. 106-58, 113 Stat. 430, 434 (1999); Pub. L. No. 105-277, 112 Stat. 2681, 2681-485 (1998); Pub. L. No. 105-61, 111 Stat. 1272, 1277 (1997); Pub. L. No. 104-208, 110 Stat. 3009, 3009-319 (1996); Pub. L. No. 104-52, 109 Stat. 468, 471 (1995); Pub. L. No. 103-329, 108 Stat. 2382, 2385 (1994); Pub. L. No. 103-123, 107 Stat. 1226, 1228 (1993); Pub. L.

No. 102-393, 106 Stat. 1729, 1732 (1992). Congress' stated explanation for the prohibition is that a decision to grant relief from federal firearms disabilities "could have devastating consequences for innocent citizens if the wrong decision is made." S. Rep. No. 103-106, 103d Cong., 1st Sess. 29 (1993); S. Rep. No. 102-353 102 Cong., 2d Sess., 19-20 (1992). Congress has reiterated that "[t]here is no reason to spend the Government's time or taxpayers' money to restore a convicted felon's right to own a firearm." H. R. Rep. No. 104-183, 104th Cong., 1st Sess. 15 (1995).

Some time after his conviction, Palma applied to the ATF for relief from his firearms disability under S 925(c). The ATF informed him that it could not act on his request because Congress' prohibition of the use of appropriated funds made the necessary background check and investigation impossible. Palma then filed a petition for relief from the firearms disability in the district court. In that petition, he conceded that Congress has prohibited the ATF from acting on petitions for relief. Petition for Relief at P 12. Nonetheless, he asked the district court to conduct its own inquiry into his fitness to own a firearm and to issue an order restoring his firearms privileges. Id. at PP 22-26. Palma's petition alleged

> that he was fifty-nine years old, self-employed as a real estate appraiser, and that his employment takes him into high-crime, dangerous areas of Philadelphia and suburbs . . . . that he had never been convicted of any offense other than the one for which he pled guilty, that he is of sound mind and has no history of mental illness, that he has an excellent reputation for good character, and attached to his petition affidavits from reliable and responsible citizens. . . . that he is not likely to act in a manner that is dangerous to the safety of the public, and that granting the relief sought would not be contrary to the public interest.

Palma's Br. at 3. The government responded to Palma's petition by filing a motion to dismiss in which it asserted that the district court has "no authority to consider in the first instance the merits of a convicted felon's application for relief from his federal firearms disabilities." Government's Br. at 7.

5

The district court denied the government's motion to dismiss. The court issued an order setting a hearing on Palma's motion, and directing parties to submit proposed findings of fact and conclusions of law. The court also ordered that those proposals "should address the issue, assuming arguendo plaintiff meets his `heavy burden' on the merits, [of whether] the denial of appropriated funds to administer the law is a miscarriage of justice." App. at 31. Thereafter, pursuant to our decision in Rice v. United States, the district court asserted jurisdiction over Palma's petition and held an evidentiary hearing at which Palma and a number of character witnesses testified. At the conclusion of that hearing, the district court entered an order restoring Palma's firearms privileges. Palma v. United States, 48 F. Supp.2d 481 (E. D. Pa. 1999). This appeal followed.

III.

A.

Before discussing the merits of the government's appeal, we must address Palma's contention that the government's appeal should be dismissed because it is untimely. The district court's judgment was entered on April 21, 1999. The government's notice of appeal was filed on June 17, 1999; fifty-six days after the entry of judgment. Simultaneously with his appellee's brief, Palmafiled a motion to dismiss the government's appeal as untimely. Palma argues that inasmuch as his petition arises from a criminal conviction, his petition for relief from the firearms disability must, of necessity, also be a criminal proceeding. Therefore, he argues, the government's notice of appeal had to be filed within 30 days of the district court's judgment, as required in a criminal case, see F. R. A. P. 4(b)(1)(B)[captioned "Appeal in a Criminal Case], rather than within 60 days as required in a civil case, see F. R. A. P. 4(a)(1)(B)[captioned "Appeal in a Civil Case]. We disagree.

At the outset, we note that Palma's contention that his petition for relief is a criminal proceeding is completely

6

conclusory. He offers absolutely no authority for it. This may be because none exists. A proceeding can not be defined as criminal merely because it arises from, or pertains to, a prior criminal proceeding. For example, a petition for a writ of habeas corpus is an independent civil action even though the detention complained of arises out of a criminal action. Riddle v. Dyche, 262 U. S. 333, 335-36 (1923). Similarly, a motion to correct, set aside or reduce a criminal sentence under 28 U. S. C. S 2255 is deemed civil for purposes of F. R. A. P. 4. See United States v. Hayman, 342 U. S. 205, 209 n.4 (1952); Rule 11 -- Section 2255 Proceedings. Moreover, parole and probation revocation hearings are civil proceedings even though they may subject an offender to a period of incarceration based upon a prior criminal conviction. Gagnon v. Scarpelli , 411 U. S. 778, 788-89 (1973).

Similarly, the scheme established under the Gun Control Act of 1968 plainly demonstrates that petitions for judicial review under S 925(c) are civil proceedings. Convicted felons are not the only persons that firearms disabilities are imposed upon. The Gun Control Act imposes those disabilities on nine categories of persons: (1) convicted felons; (2) fugitives from justice; (3) unlawful users of controlled substances; (4) any person who has been adjudicated as a mental defective or who has been committed to a mental institution; (5) illegal aliens; (6) persons dishonorably discharged from the armed forces; (7) persons who have renounced their United States citizenship; (8) any person who is subject to a restraining order in a stalking case; and (9) any person who has been convicted of a misdemeanor crime of domestic violence. 18 U. S. C. S 922(g)(1)-(9). Though one could plausibly argue that most of these categories implicate criminal proceedings, it certainly can not be argued that a challenge to a disability based upon dishonorable discharge, or renouncing citizenship is criminal. Yet, under S 925(c), any of the nine categories of persons listed in S 922(g)(1)-(9) may apply for reinstatement of firearms privileges. The application is made to the Bureau of Alcohol, Tobacco, and Firearms, an administrative agency. Judicial review of the ATF 's decision under S 925(c) is conducted under the familiar "arbitrary and capricious" standard of the

7

Administrative Procedure Act. 5 U. S. C. S 706(2)(A). See Bagdonas v. ATF, 93 F.3d 422, 425 (7th Cir. 1996); United States v. McGill, 74 F.3d 64, 66 (5th Cir. 1996); Bradley v. ATF, 736 F.2d 1238, 1240 (8th Cir. 1984); Kitchens v. ATF, 535 F.2d 1197, 1199-1200 (9th Cir. 1976). Moreover, a petition for judicial review under S 925(c) names the government as the defendant or respondent. It is not an action brought by the "People of the United States" or a given State for violation of a criminal law.

Palma's petition for judicial review under S 925(c) alleges that, inasmuch as he has no administrative relief from the firearms disability in light of Congress' appropriations ban, he is excused from seeking the administrative remedy that the Secretary is statutorily empowered to give, and the district court therefore should exercise its jurisdiction and afford him an avenue of relief. Petition, at PP 15,16, 17. Palma named himself as the petitioner, and the government as the respondent. His own pleading is therefore consistent with a civil, as opposed to a criminal, proceeding.

Consequently, we hold that the government's appeal was timely under F. R. A. P. 4(a)(1)(B), and we will therefore deny Palma's motion to dismiss.

B.

In Rice v. United States, 68 F.3d 702 (3d Cir. 1995), we held that, despite the congressional prohibition against spending government funds to process S 925(c) applications for relief, a district court retains subject matter jurisdiction to consider a convicted felon's petition for relief from the federal firearms disability in the first instance. We concluded that the annual congressional bans on the expenditure of funds to process S 925(c) applications "do not evidence an intent to repeal or limit the district court's jurisdiction to review BATF 's . . . inaction on[a convicted felon's] section 925(c) application. . . ." Id. at 710. We also concluded that the "[ ]ATF 's continuing inability to process [a convicted felon's] section 925(c) application constitutes an undue delay excusing [the convicted felon] from exhausting his administrative remedies that allows him to seek judicial review." Id.

8

As a consequence of our decision in Rice, a district court entertaining a S 925(c) application for relief must "determine in the exercise of its sound discretion whether the facts [the convicted felon] alleges indicate a potential for a miscarriage of justice." Id. If so, a district court may permit the petitioner to "submit additional evidence of his fitness to have his firearms privileges restored, and, thereafter, [the court will] decide whether[the]. . . application satisfies section 925(c)'s standards for restoration of a convict's firearms privileges." Id., In Rice, we remanded with instructions to permit testimony only if the facts alleged by the petitioner indicated that a potential for a miscarriage of justice would otherwise result. We stated:

> we will remand this case to the district court to determine in the exercise of its sound discretion whether the facts Rice alleges indicate a potential for a miscarriage of justice. If so, it should then permit Rice to submit additional evidence of his fitness to have his firearms privileges restored and, thereafter, decide whether Rice's application satisfies section 925(c)'s standards for restoration of a convict's firearms privileges.

68 F.3d at 710 (emphasis added). We also explicitly noted that a convicted felon seeking relief under S 925(c) "bears a heavy burden" because "possession of a firearm after a disabling conviction is a privilege, not a right." Id. (citing Lewis v. United States, 445 U. S. 55 (1980)).

The government contends that Rice's holding that district courts have subject matter jurisdiction over applications for relief from firearms disabilities despite Congress' ban on appropriations for S 925(c) investigations is"fundamentally flawed." Government's Br. at 18. As the government is quick to point out, Rice has been rejected by four other Courts of Appeals that have considered the issue. See McHugh v. Rubin, ___ F.3d ___, 2000 WL 955420 (2d Cir. July 11, 2000); Owen v. Magaw, 122 F.3d 1350 (10th Cir. 1997); Burtch v. Department of the Treasury, 120 F.3d 1087 (9th Cir. 1997); United States v. McGill, 74 F.3d 64 (5th Cir. 1996). Cf. Saccacio v. Bureau of Alcohol, Tobacco & Firearms, 211 F.3d 102 (4th Cir. 2000)(Not taking direct

9

issue with our analysis in Rice because of its holding that the Secretary's denial of an application for relief is a jurisdictional requirement that is not satisfied simply because of the agency's failure to process the application). However, despite its disagreement with Rice, the government realizes that Rice is binding on us1 and that the district court was bound by that decision. Therefore, as the government also concedes, the district court did not err under Rice in exercising jurisdiction over Palma's S 925 (c) application. Nonetheless, the government judiciously submits that "en banc reconsideration of Rice may be warranted at a suitable juncture, in this Court's discretion." Government's Br. at 18.

However, we need not now respond to the government's concerns about our analysis in Rice because, inasmuch as we conclude that Palma failed to establish the requisite "miscarriage of justice," he is not entitled to have the firearms disability removed in any event.

The district court held that "the government's failure to provide funds to investigate and process applications for relief as provided in the statute constitutes a miscarriage of justice, where, . . . [Palma] meets the statutory requirements for such relief and there is no way for him to obtain the relief authorized by the statute." 48 F. Supp.2d at 486. In so holding, the district court misapplied S 925(c), and misinterpreted our holding in Rice. Clearly, under the unambiguous language of the statute, it is not the absence of administrative relief that constitutes a "miscarriage of justice." Rather, the convicted felon must allege facts in his or her application for relief which "indicate a potential for a miscarriage of justice," if the petition is denied. Therefore, a showing of a "potential for a miscarriage of justice" is the threshold showing which a convicted felon must make under Rice in order for the district court to permit the applicant to submit evidence of his or her fitness to have firearms privileges restored.2 Then, and only then, can the

_____

1. See Third Circuit IOP 9.1.

2. Although S 925(c) refers to "additional evidence", it is obvious that, in the current context there will be no evidence other than that which may be received from the petitioner as there will be no formal denial, no investigation and no report.

10

district court receive such evidence and consider it in determining whether the applicant satisfies the other requirements of S 925(c) -- i. e., whether the applicant will not be likely to act in a manner dangerous to public safety and that the granting of relief would not be contrary to the public interest.

A contrary reading of S 925(c) yields absurd results. It would sanction removal of the disability based upon something tantamount to an ex parte proceeding that is controlled by the convicted felon because the district court would have to receive whatever admissible evidence the petitioner offered and render a decision based solely upon that one-sided record whenever a petition for relief is filed. For example, one who seeks to obtain assault weapons in order to launch an attack upon members of a religious or ethnic minority group or a bothersome neighbor could always establish a "miscarriage of justice" based upon the prohibition of using appropriations to investigate his/her fitness to own or possess firearms. Such a petition would thereby open the courthouse door for a hearing, in which the judge would hear positive things the petitioner chose. Accordingly, the judge may never learn the kind of information that an investigation could ferret out (i.e., the "bothersome" neighbor who may have a justifiable concern over lifting the petitioner's disability).3

Rice simply gives the district court jurisdiction to adjudicate a petition under S 925(c). However, absent a preliminary showing of a miscarriage of justice, the petitioner is not entitled to introduce evidence to support the petition. That preliminary showing must, therefore, arise from the averments in the four corners of the petition. In the event that the petitioner can establish that removing the disability is necessary to prevent a miscarriage of justice, it is certainly possible that a law enforcement or regulatory agency other than ATF could conduct an appropriate inquiry to allow the court to rule upon petitioner's claim. However, Congress clearly did not intend to authorize such an inquiry unless justice requires it.

_____

3. We set forth this admittedly extreme hypothetical not to cast aspersions on Mr. Palma, but to illustrate the problems evidenced in the district court's interpretations of the "miscarriage of justice" standard.

11

Here, Palma claims that he needs to carry a gun for"self-defense," and he makes two allegations in support of that claim. First, he alleges that "[t]he nature of Petitioner's employment requires him to travel in high crime areas in order to conduct appraisals." Petition, at P 20. Second, he states "Petitioner seeks restoration of Federalfirearms privileges so that he may possess a firearm for self-defense purposes." Id. at P 21. The two justifications thus boil down to a single assertion that Palma needs to have the privilege of possessing a gun restored for purposes of self-defense. However, Palma's vague and generalized claim of self-defense falls woefully short the stringent "miscarriage of justice" threshold that must be established before the district court can receive evidence in support of his S 925(c) petition.

Palma's "self-defense" claim lacks any foundation in this record. Palma's petition does not identify any particular high crime area where he is in danger, nor does it even allege a single instance where his life has been placed in danger because he had to conduct an appraisal. At the hearing on Palma's petition, Palma testified that the "high crime areas" referred to in his petition are actually the entire City of Philadelphia and its surrounding suburbs of Bucks, Delaware and Montgomery Counties. App. at 71.

> Q: In your view, it's dangerous in Philadelphia, and it's dangerous in Delaware County, and Bucks County and Montgomery County, any of the surrounding counties, as well as the City is dangerous, right?
>
> A: That's correct.

App. at 71. He was not even able to identify any particular part of the city or the surrounding counties as being particularly dangerous. Id.

> Q: You are not able to . . . identify any particular high crime areas; is that right?
>
> A: That's correct.

Id. Moreover, despite his concerns about conducting appraisals in Philadelphia and the surrounding counties unarmed, Palma admitted that he was not aware of a single incident in which an appraiser had been personally

12

attacked on the job. Id. at 73. Finally, Palma neither alleged in this petition nor offered testimony that an appraiser's job is dependent upon carrying a gun. On the contrary, it was openly acknowledged that no one is required to conduct appraisals in places that are considered genuinely unsafe. Id. at 95.

When Palma was specifically asked if any appraiser had ever told him of being personally threatened in the dangerous environs of Philadelphia and southeastern Pennsylvania in the 12 years Palma had been in the real estate appraisal business, he conceded that none had, although appraisers had reported some stolen equipment. Id. at 72. The district court noted in its Findings of Fact that: "Mr. Palma testified that he would only use a gun in self-defense in a situation where his life was threatened, and not in a situation merely where property was being stolen." 48 F. Supp. 2d at 481.

Yet, the only incidents that Palma could relate to the court concerned property loss, not threats to life. The court noted: "[Palma] testified as to one incident in which an appraiser's camera was stolen out of his car, and while the appraiser was successfully chasing down the camera thief, someone else stole the car radio." Id. at 482. The court did note that Palma also testified that "other appraisers had been robbed," but it is not clear that those incidents involved "robberies" in the technical sense, or that they involved a threat to anyone's person because Palma also testified (as noted above) that he was unaware of any appraiser being "personally attacked." App. at 73. The overall context of his testimony clearly does not suggest that the generalized reference to robbery involved a personal attack because "Mr. Palma was unable testify as to the specifics of any other incident." Id . His inability to do so is as inconsistent with his belief that the City of Philadelphia and its surrounding suburbs are so dangerous as to justify restoring his privilege of carrying a gun, as it is with a finding that a "miscarriage of justice" would result from denying his petition.

Thus, the foundation for his attempt to gain relief from the firearms disability rests upon little more than the fact that he would feel safer, and be more comfortable in

13

Philadelphia and the surrounding counties, if he carried a gun during his appraisals. This hardly satisfies the burden he must meet before the district court can receive evidence in support of his petition.

IV.

Accordingly, we will reverse the district court's order restoring Palma's firearms privileges and remand with directions to the district court to enter an order dismissing the petition for relief from disability.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

14