Ammoneta SEQUOYAH, Richard Crowe, Gilliam Jackson, Individually and Representing Other Cherokees similarly situated, and the Eastern Band of Cherokee Indians, and The United Ketooah Band of Cherokee Indians

v.

TENNESSEE VALLEY AUTHORITY.

Civ. No. 3–79–418.

United States District Court,
E. D. Tennessee, N. D.

Nov. 2, 1979.

Robert M. Stivers, Jr., Knoxville, Tenn., Ben Oshel Bridgers, Sylva, N. C., Walter R. Echo Hawk, Kurt V. Blue Dog, Native American Rights Fund, Boulder, Colo., Ellen Leitzer, Susan Tomita, National Indian Youth Counsel, Albuquerque, N. M., for plaintiffs.

Herbert S. Sanger, Jr., Gen. Counsel, Justin M. Schwamm, Sr., Asst. Gen. Counsel, James E. Fox, Asst. Gen. Counsel, Michael R. McElroy, Tennessee Valley Authority, Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This is an action seeking injunctive relief against impoundment of the Tellico Reservoir on the Little Tennessee River. The ground for such relief is that the flooding of the Little Tennessee will violate plaintiffs' constitutional and statutory rights to freely exercise their religion. Before the Court are plaintiffs' motion for a preliminary injunction and defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6). Both motions have been exhaustively briefed and argued orally before this Court.

## I. FACTS

In 1966, Congress appropriated the first construction funds for the Tellico Dam and Reservoir project. Since then over $111,000,000 have been spent on the project which is now near completion. A fruitful source of litigation, the dam has been the subject of at least nine lawsuits on the district court level alone. This, the latest one, was filed on the eve of its completion, even though the plaintiffs have known about the project and its attendant First Amendment issues since 1965. Although enjoined twice by the courts, the project has been free from any injunction for at least nine of the last fourteen years. It is difficult to understand why plaintiffs have waited until now to raise their constitutional arguments in court.

In 1967, the Tennessee Valley Authority began acquiring privately owned property along the Little Tennessee River as the initial step in its project to impound a reservoir there. The latest lawsuit against the dam, before this one, resulted in a permanent injunction against impoundment of the reservoir based on the Endangered Species Act, 16 U.S.C. Chapter 35, Sec. 1531 et seq. See *TVA v. Hill*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978). On September 24, 1979, the President signed into law the Energy and Water Development Appropriation Bill, providing, in relevant part, as follows:

[N]otwithstanding provisions of 16 U.S.C., Chapter 35 or any other law, the Corporation is authorized and directed to complete construction, operate, and maintain the Tellico Dam and Reservoir Project for navigation, flood control, electric power generation, and other purposes, including the maintenance of a normal summer reservoir pool of 813 feet above sea level.

Since that time, TVA has been working toward completion of the dam and impoundment of the reservoir. Although no specific date has yet been set for closing the gates of the dam to begin impoundment, such action is imminent, to occur sometime after November 9, 1979.

The plaintiffs in this lawsuit are two bands of the Cherokee Indian nation and three individual Cherokee Indians. Plaintiffs claim that the land along the Little Tennessee River which will be flooded by the Tellico Reservoir is sacred to the Cherokee religion and a vital part of the Cherokee religious practices. The land includes several old Cherokee settlements and burial grounds with religious significance to the Cherokee people.

The plaintiffs contend that impoundment of the reservoir will violate their constitutional right to free exercise of their religion, in addition to their claimed statutory rights of access to lands of religious and historical significance. These statutory claims are based on the American Indian Religious Freedom Act, 42 U.S.C. § 1996; the National Historic Preservation Act, 16 U.S.C. §§ 470 et seq.; and the Tennessee cemetery statutes, Tenn.Code Ann. Sec. 46-401 et seq. TVA contends that impoundment will infringe none of the plaintiffs' legal rights.

## II. PLAINTIFFS' CLAIMED STATUTORY RIGHTS

The Congress and the President have authorized and directed TVA to impound the Tellico Reservoir "notwithstanding provisions of 16 U.S.C., Chapter 35 *or any other law*." (emphasis added). There

is no question here that Congress has the power to make exceptions to rights either it or state legislatures have created by statute, as long as such exceptions are not invidiously discriminatory. Rather, plaintiffs contend that Congress has not exercised its power to exempt the Tellico project from the American Indian Religious Freedom Act, the National Historic Preservation Act, and the Tennessee cemetery statutes. Plaintiffs cite the law disfavoring implied repeal stated in *TVA v. Hill*, 437 U.S. 153, 189–190, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978). However, this is not a case, like *Hill*, in which a general appropriations measure with no repeal or exception language of any kind is presented to the Court as an implied repeal of a specific statute. Instead, there is an expressed Congressional mandate to impound the Tellico Reservoir "notwithstanding . . . any other law." There is nothing implied or ambiguous about this language and the law of implied repeal stated in *Hill* is inapposite.

■ Plaintiffs also cite, *D. C. Federation of Civic Associations, Inc. v. Volpe*, 140 U.S. App.D.C. 162, 434 F.2d 436 (D.C.Cir.1970). In that case, the D. C. Circuit interpreted a Congressional mandate to complete construction of a highway project to be consistent with the procedural requirements of Title 23 of the United States Code. In so interpreting the Congressional language, the Court was merely trying to avoid the Constitutional issues presented by that case. Unfortunately, such a recourse is not available to this Court. The language exempting the Tellico Dam project from "any other law" is clear and explicit. The creation of a reservoir will necessarily prevent access to many of plaintiffs' sacred sites. If the statutes cited by plaintiffs do guarantee access to these sites, as argued by plaintiffs, they are unavoidably repugnant to Congress' order to complete the dam. Congress has clearly and expressly exempted the Tellico Reservoir from any law repugnant to its completion.

## III. CONSTITUTIONAL CLAIMS

■ Plaintiffs base their constitutional challenge to the Tellico Reservoir on the First, Fifth, and Ninth Amendments to the Constitution. The First Amendment guarantees the right to freely exercise one's religion. The Fifth Amendment, through the due process clause, guarantees equal protection of the law by the federal government. *See, e. g., Schlesinger v. Ballard*, 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1974). The Ninth Amendment simply provides that the specification of certain rights in the Constitution shall not be construed to deny or disparage other rights retained by the people. Of course, Congress cannot exempt the Tellico project from any of these constitutional provisions. The Court assumes that the land to be flooded is considered sacred to the Cherokee religion and that active practitioners of that religion would want to make pilgrimages to this land as a precept of their religion.

■ Since the Ninth Amendment grants no substantive rights to plaintiffs, *see Tanner v. Armco Steel Corp.*, 340 F.Supp. 532 (S.D.Texas, 1972), the complaint fails to state a cause of action under that amendment.

■ The real substantive issue in this lawsuit is whether the impounding of the Tellico Reservoir would infringe the free exercise clause of the First Amendment. An essential element to a claim under the free exercise clause is some form of governmental coercion of actions which are contrary to religious belief. *Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977); *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Board of Education v. Allen*, 392 U.S. 236, 248–249, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968); *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); *Abington School District v. Schempp*, 374 U.S. 203, 223, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963); *Torcaso v. Watkins*, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961); *Braunfeld v. Brown*, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961). This governmental coercion may take the form of pressuring or forcing individuals not to participate in religious practices. *See, e. g. McDaniel v. Paty*,

435 U.S. 618, 98 S.Ct. 1322, 55 L.Ed.2d 593 (1978). Other than preventing access to certain land, however, the impoundment of the Tellico Reservoir has no coercive effect on plaintiffs' religious beliefs or practices. The question thus becomes whether the denial of access to government-owned land considered sacred and necessary to plaintiffs' religious beliefs infringes the free exercise clause. The federal government uses the land it owns for a wide variety of purposes, many of which require limiting or denying public access to the property. *See e. g., Downing v. Kunzig*, 454 F.2d 1230 (6th Cir. 1972). The Court has been cited to no case that engrains the free exercise clause with property rights. The free exercise clause is not a license in itself to enter property, government-owned or otherwise, to which religious practitioners have no other legal right of access. Since plaintiffs claim no other legal property interest in the land in question, aside from the statutory claims previously discussed, a free exercise claim is not stated here.

This leaves only plaintiffs' equal protection argument. There is certainly nothing invidiously discriminatory about impoundment of a reservoir in itself. To state a colorable equal protection claim the plaintiffs must allege that a denial of a right or benefit be invidiously discriminatory. *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963). This is not present here. As discussed previously, neither plaintiffs nor the general public have a right or interest in access to land merely because it is owned by the federal government. The flooding of the Little Tennessee will prevent everyone, not just plaintiffs, from having access to the land in question.

Defendant also raises defenses based on estoppel and laches. In light of the Court's disposition of the issues raised by plaintiffs, the Court need not decide these questions.

For the foregoing reasons, it is ORDERED that plaintiffs' motion for a preliminary injunction be, and the same hereby is, denied. It is further ORDERED that defendant's motion to dismiss be, and the same hereby is, granted.

Order Accordingly.