The **BALD EAGLE RIDGE PROTECTION ASSOCIATION, et al., Plaintiffs,**

v.

**Bradley L. MALLORY, et al., Defendants.**

**No. 4:CV–00–0187.**

United States District Court, M.D. Pennsylvania.

Oct. 24, 2000.

---

Amy Sinden, Charles McPhedran, Penn-Future, Philadelphia, PA, for plaintiffs.

Joseph J. Terz, Assistant United States Attorney, Dulce Donovan, Assistant United States Attorney, United States Attorney's Office, Harrisburg, PA, for federal defendants.

John M. Hrubovcak, Assistant Counsel, Office of Chief Counsel, Pennsylvania Department of Transportation, Harrisburg, PA, for defendant Mallory.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On February 1, 2000, plaintiffs The Bald Eagle Ridge Protection Society, the National Audubon Society, Pennsylvania Trout, Inc., Pennsylvania Federation of Sportsmen's Clubs, Inc., The Pennsylvania Deer Association, Inc., and United Bowhunters of Pennsylvania commenced this action by filing a complaint under the

Clean Water Act (CWA), 33 U.S.C. §§ 1251 et seq., section 4(f) of the Department of Transportation Act (DOT Act), 49 U.S.C. § 303(c), and the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 et seq. Defendants included Secretary of the Pennsylvania Department of Transportation Bradley L. Mallory, Secretary of the U.S. Army Louis Caldera, the U.S. Army Corps of Engineers, Secretary of the U.S. Department of Transportation Rodney Slater, and the Federal Highway Administration (FHWA).

On March 21, 2000, plaintiffs filed an amended complaint, designated the First Amended Complaint, adding as defendants the U.S. Environmental Protection Agency (EPA) and its Administrator, Carol M. Browner. Answers to the complaint and amended complaint have been filed, as has the administrative record.

While plaintiffs indicated in the complaint and amended complaint that they sought injunctive relief, no motion therefor was filed, and so no injunction has issued. *See* Fed.R.Civ.P. 65(d) (describing form for order granting injunction); Fed.R.Civ.P. 7(b)(1) (application for order must be by written motion unless made during trial or hearing).

At issue is a stretch of highway which will connect the Tyrone Expressway north of Altoona, Pennsylvania, to the Mount Nittany Expressway outside of State College, Pennsylvania. The project is part of the Interstate Highway System and has been designated "I–99." The Pennsylvania Department of Transportation (PennDOT) and the U.S. Department of Transportation have selected a route for the project which will run along Bald Eagle Ridge for approximately eight miles. In simple terms, plaintiffs want the highway to run along Bald Eagle Valley in contrast to defendants' selection of the ridge.

Of course, differences of opinion over highway construction projects are not uncommon and serve as a fertile ground for litigation under federal environmental statutes. What sets this case apart from the usual dispute is Congress' apparent attempt to exempt the I–99 project from the operation of otherwise applicable statutes, using an appropriations bill as its vehicle. The issue is whether the language of the appropriations bill, which has been signed into law, has that effect. Before the court is defendants' motion for judgment on the pleadings, through which defendants argue that the environmental laws do not apply to I–99.

## DISCUSSION:

### I. STANDARD

■ "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). A motion for judgment on the pleadings is analyzed under the same standard as a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *Prima v. Darden Restaurants, Inc.*, 78 F.Supp.2d 337, 342 (D.N.J.2000); *DeBraun v. Meissner*, 958 F.Supp. 227, 229 (E.D.Pa.1997). The primary difference is that a Rule 12(c) motion is filed after an answer while a Rule 12(b)(6) motion is filed before an answer. *Prima* at 341–342.

A motion to dismiss under Rule 12(b)(6) admits the well pleaded allegations of the complaint, but denies their legal sufficiency. *Hospital Building Co. v. Trustees of the Rex Hosp.*, 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976). The complaint must be construed in favor of the plaintiff with every doubt resolved in the plaintiff's favor. *In re Arthur Treacher's Franchise Litig.*, 92 F.R.D. 398, 422 (E.D.Pa.1981). That is, the court must accept as true all factual allegations set forth in the complaint as well as all reasonable inferences that can be drawn from them. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir.1994). The court looks only to the facts alleged in the complaint and any attachments, without reference to any other parts of the record. *Jordan* at 1261.

"[A] case should not be dismissed unless it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations." *Id.* (citing, *inter alia, Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Whether a plaintiff will ultimately prevail is not a consideration for review of a motion under Rule 12(b)(6). *Nami* at 65.

## II. STATEMENT OF FACTS

Plaintiffs do not contest the summary of the allegations of the amended complaint provided by defendants, and we find it to be an accurate summary which is sufficient for present purposes. We therefore restate that summary, without citations.

The Bald Eagle Valley is a narrow valley in Blair and Centre Counties within the Susquehanna–Chesapeake Watershed. The valley is bordered to the northwest by the Allegheny Front and to the southeast by the Bald Eagle Ridge. Existing U.S. Route 220 runs along the valley floor, roughly paralleling the courses of North and South Bald Eagle Creeks. Most of the commercial and residential development in the area has occurred on the Bald Eagle Valley floor adjacent to existing roads.

Bald Eagle Ridge itself has remained in its relatively natural state. It is covered by an extensive tract of largely undeveloped forested land. The hardwood forest ecosystem supports a diversity of wildlife and plant life. There are more than 500 spring seeps and wetlands and 66 perennial and intermittent streams scattered along the west slopes of Bald Eagle Ridge.

In an attempt to relieve congestion and traffic safety problems on existing Route 220, PennDOT and FHWA plan to build a section of I–99 that would lead from the Tyrone Expressway north of Altoona to the Mount Nittany Expressway outside of State College. PennDOT and FHWA have chosen a route that would run eight miles along the Bald Eagle Ridge. Plaintiffs allege that constructing the highway along the Bald Eagle Ridge will irreparably harm the ecosystem of the ridge.

As necessary, other factual and procedural matters will be discussed in the appropriate context. We omit the allegations relating directly to the merits of the complaint as recited by both defendants and plaintiffs in their briefs.

## III. RELEVANT STATUTORY PROVISION

Defendants contend that the various statutory provisions, and particularly the environmental statutes, on which plaintiffs rely are not applicable because Congress has so stated. Specifically, defendants rely on the following statutory provision:

(*o*) CLARIFICATION.—Notwithstanding any other provision of law, the Secretary shall approve, and the Commonwealth of Pennsylvania is authorized to proceed with, engineering, final design, and construction of Corridor O of the Appalachian development highway system between Bald Eagle and Interstate Route 80 (as redefined by this Act). All records of decision relating to Corridor O issued prior to the date of enactment of this Act shall remain in effect.

Transportation Equity Act for the 21st Century, Pub.L. No. 105–178, § 1212(*o*), 112 Stat. 107, 198 (1998), as amended, TEA 21 Restoration Act, Pub.L. No. 105–206, Title IX, § 1226(e), 112 Stat. 834, 840 (1998).

## IV. REPEAL BY IMPLICATION

A preliminary matter is one of the terminology to be used. Defendants argue in terms of "exemption" from other statutes and acts, while plaintiffs contend that the proper analysis is that of "repeal by implication." While plaintiffs felt the need to file a sur-reply brief on this distinction, we note that the characterization does not affect the arguments of the parties, as the same principles are addressed and generally the same cases are cited.

Congress has the power to amend, suspend or repeal a statute by an appropriations bill, as long as it does so clearly. *Robertson v. Seattle Audubon Soc.,* 503 U.S. 429, 440, 112 S.Ct. 1407, 1414, 118 L.Ed.2d 73 (1992). "There can be no doubt that Congress could suspend or repeal the authorization contained in [a current statute] ...; and it could accomplish its purpose by an amendment to an appropriation bill, or otherwise." *United States v. Dickerson,* 310 U.S. 554, 555, 60 S.Ct. 1034, 1035, 84 L.Ed. 1356 (1940). "The whole question depends on the intention of Congress as expressed in the statutes." *United States v. Mitchell,* 109 U.S. 146, 150, 19 Ct.Cl. 703, 3 S.Ct. 151, 153, 27 L.Ed. 887 (1883).

*United States v. McGill,* 74 F.3d 64, 66 (5th Cir.) (brackets in original), *cert. denied,* 519 U.S. 821, 117 S.Ct. 77, 136 L.Ed.2d 35 (1996). *See also Rice v. Dep't of Alcohol, Tobacco and Firearms,* 68 F.3d 702, 707 (3d Cir.1995) (Congress may use appropriation legislation to amend or repeal substantive legislation).

■ There are two kinds of repeal, express and by implication. A repeal is express when Congress states overtly and with specificity that the subsequent statute repeals a portion of the earlier statute. *Patten v. United States,* 116 F.3d 1029, 1033 (4th Cir.1997) (quoting *Gallenstein v. United States,* 975 F.2d 286, 290 (6th Cir. 1992)). Neither party argues that § 1212(*o*) constitutes an express repeal of any other legislation, and we therefore do not address the term further.

■ A repeal by implication may be found in the absence of an express repeal when the earlier and later statutes are irreconcilable. *Gallenstein* at 291 (quoting *Morton v. Mancari,* 417 U.S. 535, 550, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974)). "[B]efore courts will hold that Congress has used an appropriation act to repeal substantive legislation or preclude judicial review of administrative action, the intention to do so must be clearly stated." *Rice* at

707 (citations omitted). A court will find congressional intent to repeal by implication only when (1) the two acts are in irreconcilable conflict and (2) the later act covers the whole subject of the earlier one and is clearly intended as a substitute. *Patten* at 1034. Neither party argues that the latter principle applies, and again we address it no further.

■ In analyzing a conflict between the statutory provisions, the court must apply a presumption against finding a repeal by implication because such repeals are disfavored. *Patten* at 1034. *Cf. Sandoval v. Reno,* 166 F.3d 225, 231 (3d Cir.1999) (referring to "longstanding doctrine disfavoring repeal of jurisdictional statutes by implication").

■ It also must be emphasized that the scope of a repeal by implication will be no broader than the irreconcilable conflict between the statutes. In *Rice,* for example, the issue was whether appropriations bills which precluded ATF from investigating or acting on applications for relief from the federal firearms disability for convicted felons precluded judicial review of ATF's refusal to process a claim. The Third Circuit held that the appropriations bills did not constitute an implied repeal of the statute allowing for judicial review (18 U.S.C. § 925(c)). Rather, ATF action was an administrative remedy which the applicant was required to exhaust; the bar on ATF action constituted a basis to excuse exhaustion. *Rice* at 706–709. Still, the applicant had to demonstrate that the district court's failure to admit evidence would result in a miscarriage of justice, and then that he would not be likely to act in a dangerous manner and that granting relief would not be contrary to the public interest. *Id.* at 709–710. *See also Palma v. United States, Dep't of Alcohol, Tobacco and Firearms,* 228 F.3d 323, 327–29 (3d Cir. 2000) (restating holding of *Rice* ). That standard would apply had ATF denied the application instead of taking no action. *See Palma* at 329 n. 2 ("additional

evidence" under § 925(c) is applicant's initial showing because there has been no report or formal denial).

Stated differently, the conflict between the appropriations bills and § 925(c) was irreconcilable insofar as § 925(c) gives ATF the authority to consider an application for relief from the federal firearms disability, but the conflict was reconcilable insofar as § 925(c) relates to judicial review of such an application. Of course, other courts of appeals have decided the question in a contrary manner, as noted in *Palma. Id.* at 328 (citing, *inter alia, McGill*). However, the standard applied in those cases was the same; the conclusion drawn simply differed from the Third Circuit's. *See, e.g., McGill* at 67 (disagreeing with Third Circuit's conclusion that the appropriation acts evidenced no clear intent to repeal § 925(c) and concluding that the limitation on ATF's funds reflected a congressional intent to suspend ability of felons to seek relief from the firearms disability).

 The question here, then, is whether § 1212(*o*) reflects a clear congressional intent to suspend the operation of the statutes on which plaintiffs base their claims, as those statutes would apply to Corridor O. In this context, we also note that the parties agree that Congress may create exemptions from generally applicable statutes for state-specific projects. *See generally Stop H-3 Ass'n v. Dole,* 870 F.2d 1419, 1431 (9th Cir.1989) (citing, *inter alia, Izaak Walton League of Am. v. Marsh,* 655 F.2d 346, 367 (D.C.Cir.), *cert. denied,* 454 U.S. 1092, 102 S.Ct. 657, 70 L.Ed.2d 630 (1981)). Repeal by implication analysis applies to such statutory exemptions. *Marsh* at 366.

Returning to the preliminary question posed at the beginning of this section, then, we apply the same analysis regardless of whether § 1212(*o*) is characterized as a repeal by implication or an exemption.

## V. STATUTORY INTERPRETATION

 When there is a question of statutory interpretation, a court begins with the language of the statute itself. *In re United Healthcare System, Inc.,* 200 F.3d 170, 176 (3d Cir.1999), *cert. denied sub nom. Local 1199J v. Official Committee of Unsecured Creditors of United Health Care System,* — U.S. —, 120 S.Ct. 2199, 147 L.Ed.2d 234 (2000). We first determine whether the language has a plain and unambiguous meaning with regard to the particular dispute. *Michael C. v. Radnor Township School Dist.,* 202 F.3d 642, 648 (3d Cir.), *cert. denied,* — U.S. —, 121 S.Ct. 47, 148 L.Ed.2d 17 (2000). The purpose is to determine the intent of Congress through the words chosen because the words are the best evidence of the drafters' intent. *Holloway v. United States,* 526 U.S. 1, 6, 119 S.Ct. 966, 143 L.Ed.2d 1 (1999). However, the court does not psychoanalyze the drafters. *Carter v. United States,* 530 U.S. 255, 120 S.Ct. 2159, 2170, 147 L.Ed.2d 203 (2000).

 In the process of interpreting a statute, there is an understanding that Congress says what it means and means what it says. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 120 S.Ct. 1942, 1947, 147 L.Ed.2d 1 (2000). Words are given their ordinary, contemporary, common meaning unless there is an indication that Congress intended the words to bear some different import. *Williams v. Taylor,* 529 U.S. 420, 120 S.Ct. 1479, 1488, 146 L.Ed.2d 435 (2000). *See also Holloway,* at 7, 119 S.Ct. 966 (referring to "commonsense reading" of statute); *First Merchants Acceptance Corp. v. J.C. Bradford & Co.,* 198 F.3d 394, 397–399 (3d Cir.1999) (statute unambiguous based on definitions included within statutory scheme). We must give effect, if possible, to every word and clause of a statute. *Alexander v. Riga,* 208 F.3d 419, 430 (3d Cir.2000) (quoting *Bennett v. Spear,* 520 U.S. 154, 173, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997)).

480

Also, the meaning of the words, plain or not, depends on the context in which they are used. *Holloway* at 7, 119 S.Ct. 966. That is, the court looks not only at the language, but to the design of the statute as a whole as well as its object and policy. *United States v. Sanders*, 165 F.3d 248, 251 (3d Cir.1999) (quoting *Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990)). *See also Michael C.* at 649 (plainness or ambiguity of language determined from language itself, specific context in which language is used, and broader context of statute as a whole). "Statutory interpretations which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *First Merchants* at 402 (citation, internal quotations omitted).

When the meaning of statutory language is plain, the sole function of the court is to enforce the statute according to its terms unless the disposition required by the text is absurd. *Hartford Underwriters*, at 1947. *See also In re Anes*, 195 F.3d 177, 181 (3d Cir.1999) (when language unambiguous, language enforced as long as statutory scheme is coherent and consistent; quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). However, because "Supreme Court cases declaring that clear language cannot be overcome by contrary legislative history are legion," *First Merchants* at 402 (also collecting cases), the exception of non-enforcement due to absurd results is reserved for rare cases. *Id.* (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)). Therefore, only absurd results and a most extraordinary showing of contrary intentions on the part of Congress justify a limitation on the plain meaning of the language of a statute. *Id.* at 403.

Implicit in this analysis is an objective/subjective distinction. That is, it is not the subjective intent of individual legislators that is the focus of the analysis (or "psychoanalysis," as Justice Scalia pointed out in *Carter*). Rather, it is the objective intent of Congress, collectively and as a deliberative body, that is at issue. Stated differently, our task is to determine what a reasonable legislator would mean, having chosen the same language and structure as was employed in the statute in question.

We must agree with defendants that the statutory language at issue in this case is plain. The first sentence of § 1212(*o*) directs the Secretary to approve the engineering, final design, and construction of Corridor O. The phrase, "Notwithstanding any other provision of law" indicates that other statutes, including the environmental statutes, do not apply in such a way as to bar approval and construction of the highway. The second sentence indicates that the highway is to be built as planned on the date of the enactment of § 1212(*o*) because the "records of decision" are to remain in effect. There is no other logical reading of these two sentences, particularly in conjunction with one another (i.e. as the context of the language at issue).

Given the plain meaning of the statute, there can be no question that the statutory provisions on which plaintiffs rely have been made inapplicable, regardless of whether the action of Congress is termed repeal by implication, exemption, suspension, or any other word or phrase which may be used to characterize this action.

While we do not believe that this conclusion requires further analysis, plaintiffs have raised arguments regarding alleged ambiguity in the statutory language which should be addressed in the interest of fairness and thoroughness. We turn, then, to those arguments.

## VI. PLAINTIFFS' ARGUMENTS

Plaintiffs argue that § 1212(*o*) does not designate which of the alternative routes, the ridge or the valley floor, is to be understood from the use of "Corridor O."

Actually, the record of decision of October 24, 1997, designates the ridge route, and the statute requires that record of decision to have effect.

In making this argument, plaintiffs cite *D.C. Fed'n of Civic Ass'ns, Inc. v. Volpe*, 434 F.2d 436 (D.C.Cir.1970), and *Northwest Forest Resource Council v. Pilchuck Audubon Soc'y*, 97 F.3d 1161 (9th Cir. 1996). Both cases are easily distinguishable.

In *Volpe*, the statutory language at issue directed the Secretary of Transportation to begin construction projects in the District of Columbia as soon as possible but specified that the construction was to be undertaken in accordance with Title 23 of the U.S.Code. *Id.* at 437–438. Thus, despite "notwithstanding any other provision of law" language, *id.* at 437, Title 23 clearly remained applicable. A contrary reading of the statute would have led to a problem of constitutional dimensions, in that D.C. residents would not have the same protections relating to any highway construction projects (as opposed to specific projects) as other U.S. residents. *Id.* at 439–444. Also, a second subsection directing that construction of the specific bridge at issue begin within 30 days was consistent with the applicability of Title 23 because "construction" included planning for construction. *Id.* at 444–445. Most importantly, there had been no final decision regarding the route for the bridge through the designated corridor. *Id.* at 445–446. Unlike the case at hand, then, Congress cannot have been directing the construction as already planned, and there was not the irreconcilable conflict supporting a repeal by implication.

The same principle distinguishes *Northwest Forest*, in which a statute required the awarding of timber harvesting contracts on federal lands when the sales had been "offered." Specific sales enjoined before they were offered, as the term was defined for purposes of the statute, were not governed by the statute. *Id.* at 1165–1166. As to the sales which had been offered, even if the high bidder was unwilling, unable, or unqualified to complete the sale, those sales still were required and could be made to other bidders, because nothing in the statute took away the discretion of the Secretaries of Agriculture and the Interior to award the contracts, or decline to do so, when the high bidder was ineligible. *Id.* at 1166. Because there was no requirement that the award be given to the highest bidder, there was no irreconcilable conflict between the statute and the regulations governing the sales (as permitted by statute). *Id.* at 1166–1167.

Once again, there was no final decision to which the Secretaries were required to adhere, such as a contract actually awarded or the record of decision in this case, and so there was no repeal by implication of the regulations. There is a final decision to which the Secretary must adhere under § 1212(*o*), and *Northwest Forest* also is inapposite.

■ Plaintiffs also argue that the language of § 1212(*o*) is not sufficiently specific to reflect an intent on the part of Congress to preclude judicial review of administrative action. We must agree that this argument has superficial appeal but, on closer examination, the appeal fades.

The problem with the argument is in the premise. The FHWA issued a final agency decision, for which there normally would be judicial review under the Administrative Procedures Act. *See esp.* 5 U.S.C. § 706(2)(A) (court must set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law). Congress, however, made that decision its own when it required, by statute, that the record of decision was to "remain in effect." That is, at that point, the record of decision became a legislative action and not an administrative action. In effect, there is no longer an administrative action for us to review.

Illustrative on this point is *Rice*, in which the Third Circuit held that a court may review a application to ATF for relief

from the federal firearms disability. The Third Circuit held that the withholding of funds to investigate and review such applications did not repeal the provision allowing judicial review, but simply excused exhaustion. The important point is that Congress never withdrew ATF's authority, it just precluded ATF from exercising its authority. Because the applicant still had a theoretical right to relief, and the inaction by ATF prevented him from obtaining that relief, the inaction in substance was a denial of available relief.

It is interesting to note that the courts which have rejected the holding of *Rice* have done so because they disagree with the Third Circuit's view of whether there has been any agency action as well as its view of the right to relief. In *McHugh v. Rubin*, 220 F.3d 53, 58 (2d Cir.2000), for example, the Second Circuit held that there was a repeal by implication of ATF's authority to grant relief under § 925(c). Moreover, it determined that § 925(c) did not create a freestanding right to relief, but established a scheme for administrative decision-making. *Id.* at 59. Judicial review was limited under § 925(c) to review of the denial of relief, not a refusal to act or the removal of the ATF's authority to act, so that there was no denial (*de facto* or otherwise) to be reviewed. *Id.* at 60–61. Moreover, there was no transfer of jurisdiction to the district courts through the appropriations bill, *id.* at 60, and so judicial review was found to be unavailable. To the same effect are *Owen v. Magaw*, 122 F.3d 1350 (10th Cir.1997), and *Burtch v. U.S. Dep't of the Treasury*, 120 F.3d 1087 (9th Cir.1997).

We think that the appropriate way to distinguish *Rice* for present purposes is to point out that Congress has gone a step further in this case than it did with respect to § 925(c). Its action with respect to the application for relief from the firearms

disability was simply to withhold funds, which cannot be said to have eliminated whatever was created by § 925(c), whether it is viewed as a freestanding right on the part of the applicant or authority on the part of ATF to provide administrative relief. Rather, Congress' action merely prevented the ATF from exercising its authority and providing relief. A court's view of whatever was created by § 925(c) then determines whether there continues to be judicial review.

In contrast, Congress' action through § 1212(*o*) must be said to have eliminated what is created by the statutory provisions under which plaintiffs proceed. That is, by making the administrative decision a legislative decision, Congress has barred plaintiffs from seeking review of the administrative decision. Moreover, the action removes from the administrative agencies any discretion they may have had: they now are required by statute to act in a predetermined manner. To the extent there may have been judicial review for "abuse of discretion," there no longer is any discretion to be abused. Finally, unlike the application for relief in *Rice* on which no action could be taken, Congress itself took the questioned action in this case. Normal review of legislative action under constitutional constraints would be the only avenue of relief, a matter not before us.[1]

Based on this analysis, plaintiffs' arguments concerning implied repeal of jurisdictional statutes are obviated because there is no question of jurisdiction to review an administrative decision, but a question of the existence of an administrative decision to be reviewed.

We believe that our conclusion regarding the plain language of § 1212(*o*) also obviates plaintiffs' arguments concerning the heightened presumption when a dis-

---

1. As discussed above, Congress may authorize specific projects which are free from otherwise applicable statutory constraints, and Congress has authority to regulate construction of highways under the Commerce Clause.

*See also* Plaintiffs' Brief in Opposition to Defendants' Motion for Judgment on the Pleadings at 20–21 (plaintiffs are not pursuing various constitutional claims raised, and rejected, in *Stop H–3 Ass'n*).

puted repeal is set forth in an appropriations bill. As defendants point out, however, the bill at issue is not limited to appropriations only, and the precise provision at issue is substantive in nature. *See TVA v. Hill,* 437 U.S. 153, 190, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978) (noting that presumption applies with greater force when the claimed repeal rests *solely on* an appropriations measure, noting reasons and distinguishing nature of substantive and appropriation enactments); *Sequoyah v. TVA,* 480 F.Supp. 608, 611 (E.D.Tenn.1979) (*Hill* involved a general appropriations bill with no repeal or exceptions language, reciting language similar to that employed in § 1212(c)), *aff'd,* 620 F.2d 1159 (6th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 357, 66 L.Ed.2d 216 (1980). Regardless, even a heightened presumption is overcome by plain language effecting a repeal by implication, as is the case here, where § 1212(o) is subject to no other reasonable interpretation except to preclude the applicability of other statutory provisions to the Corridor O project.

Also obviated is plaintiffs' argument concerning legislative history. We do not address that argument except to note that the result reached cannot be considered absurd, given the lack of legislative history supporting a finding of intent to do anything other than exempt the project from lawsuits like this one. That is, the only legislative history appears in a "Committee Print" published some five months after passage of the bill and about four months after its enactment. The explanatory comment states explicitly that § 1212(o) is intended to be "a complete waiver from the application of federal environmental statutes to a specified project on Corridor O . . . .," and that "[n]o other federal agency approval or permit is required . . ." Transportation Equity Act for the 21st Century, as amended, TEA 21 Restoration Act, Together with Updated Explanatory Materials, Committee Print 105–85 (October 1998). Plaintiffs argue at length that we should not rely on this report because

it was prepared by the draftsmen (the subjective intent problem discussed above) and because it was prepared after passage of the bill, so that it was not available to Congress (whose objective intent governs).

We do not dispute these principles, but it remains the fact that the *only* legislative history is *consistent with* our reading of the plain language of the statute, and so this reading cannot be found absurd in light of the purpose behind the statute. To ·paraphrase *First Merchants* (at 403), we find no extraordinary showing of contrary intentions on the part of Congress to justify a limitation on the plain language of the statute.

Plaintiffs cite a number of cases in which the "notwithstanding any other provision of law" language employed in § 1212(o) was found not to have repealed certain other statutes by implication. Those cases are inapposite because the language was found in the same enactment as the non-repealed statute or was incorporated by reference, the language purported to preempt state law, or would render other language within the same statute "nugatory." *Northwest Forest* at 1167 (earlier statutes not repealed when incorporated by reference); *Oregon Natural Resources Council v. Thomas,* 92 F.3d 792, 797 (9th Cir.1996) (provision giving courts jurisdiction to enjoin actions not in accordance with applicable law would be nugatory if no other laws applicable); *E.P. Paup Co. v. Director,* 999 F.2d 1341, 1348–1349 (9th Cir.1993) (state law not preempted by "notwithstanding" language, especially in light of legislative history expressing a contrary intent); *Golden Nugget, Inc. v. American Stock Exchange, Inc.,* 828 F.2d 586, 588–589 (9th Cir.1987) (*per curiam;* state law not preempted when evidence showed Congress' intent was to allow SEC regulation of specific field and to overrule prior court decision). *Cf. In re Glacier Bay,* 944 F.2d 577, 582–583 (9th Cir.1991) ("notwithstanding" language not necessarily preemptive because same act referred

to other provisions of law, but finding repeal by implication because overall scheme in conflict with earlier laws). This case presents no such situation.

Plaintiffs argue in their sur-reply brief (for the first time) that FHWA did not actually choose the ridge route but that it "supported" the ridge option. Actually, the record of decision states that the "selected alternative" includes the ridge route. Record of Decision, Administrative Record, Vol. 93, at 1. Specifically, that document states:

> From its connection to the eastern end of the Tyrone Expressway near the Village of Bald Eagle, the Selected Alternative ascends the Bald Eagle Ridge to an elevation of approximately 475.5 meters (1560 feet). It proceeds northeasterly along the Bald Eagle Ridge to the Blair/Centre County line at which point it begins to descend the ridge south of Port Matilda. The Selected Alternative crosses the Bald Eagle Valley where it interchanges with the eastern end of the existing improved, four-lane section of U.S. 322 west of Port Matilda. The Selected Alternative then proceeds easterly across the valley to begin its ascent up Bald Eagle Ridge to the existing Skytop Gap where it continues in an easterly direction to its terminus at the western end of the Mount Nittany Expressway just outside of State College.

*Id.* The specific provision cited by plaintiffs reads:

> Based on these coordination efforts, the RT–G, P2–2, P3–2 alignment was identified in the Final EIS as the preferred alternative and the environmentally preferred alternative, and this Record of Decision supports that alternative as the Selected Alternative for this project.

*Id.* at 4. In other words, the FHWA selected the ridge option and the record of decision indicates that selection and supports (states the reasons providing the basis for) that selection. Plaintiffs statement that the record of decision only expresses support for the ridge option, as if FHWA was stating merely a viewpoint or preliminary opinion, is a misrepresentation of the nature of the record of decision. The document states clearly that the selected alternative includes the ridge option.

We reject as without merit plaintiffs' contentions regarding the viewpoints of other agencies. The involvement of those agencies relates to matters of preliminary approval. They did not have authority to issue the record of decision.

Finally, we reject plaintiffs' argument that we must defer to the view of other agencies, which did not treat § 1212(*o*) as repealing other provisions of law. Presuming that the views of those agencies may have any relation to this analysis, the fact remains that § 1212(*o*) directs the Secretary of Transportation to approve the project (an action taken through FHWA) and the Commonwealth to proceed with the project. Nothing relieves other agencies of their own statutory and regulatory obligations, regardless of whether or not those obligations are enforceable.

For all of these reasons, we find plaintiffs' arguments unpersuasive.

## VII. CONCLUSION

We conclude that the statutory provisions under which plaintiffs seek to proceed in this action have been repealed by implication insofar as they would apply to the I–99 project. Defendants' motion for judgment on the pleadings will be granted.

An order consistent with this memorandum will issue.

## ORDER

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. Defendants' motion (record document no. 28) for judgment on the pleadings is granted.

2. The clerk is directed to enter judgment in favor of defendants and against plaintiffs, and to close the file.