CITIBANK, N.A., Plaintiff,

v.

AFFINITY PROCESSING CORPORA-TION and Affinity Technology Group, Inc., Defendants.

No. CV 02–2857(ADS).

United States District Court,
E.D. New York.

March 8, 2003.

Landman Corsi Ballaine & Ford, P.C., by: William G. Ballaine, of Counsel, New York City, for Plaintiff.

Andrew Paul Cooper & Associates, by: Andrew Paul Cooper, of Counsel, Mineola, NY, Womble, Caryle, Sandridge & Rice, PLLC, by: Mark P. Henrique, of Counsel, Charlotte, NC, for the Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This diversity case involves allegations of fraud, misrepresentation, and equitable estoppel by New York-based Citibank, N.A. ("Citibank" or the "plaintiff") arising out of a service agreement with South Carolina-based Affinity Technology Group, Inc. and its wholly owned subsidiary, Affinity Processing Corporation (collectively, "Affinity" or the "defendants").

Presently before the Court is Affinity's motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.") or, alternatively, to transfer venue pursuant to 28 U.S.C. § 1404(a) to the District of South Carolina where a duplicate action is now pending.

## I. BACKGROUND

### A. Description of the Parties

Citibank is a nationally chartered banking and lending institution with its principal place of business in New York. Citibank's parent company is Citigroup, Inc., which reported a net income in the amount of $13.519 billion for the year 2000.

Affinity is a South Carolina-based business. In an affidavit, John Rogers ("Rogers"), Affinity's senior vice-president, stated that Affinity (i) has lost $65 million since 1994, (ii) was dropped from the Nasdaq for failing to maintain a minimum bid in the amount of $1, and (iii) had a closing stock value on May 15, 2001 of 6.5 cents per share.

### B. Factual Background

The following facts are taken from the complaint. On November 13, 1997, after lengthy negotiations which took place in New York in 1996, Citibank and Affinity executed a service agreement (the "agreement"). The agreement, which is governed by New York contract law, required Affinity to develop, install, test, operate, and license an automobile loan processing computer system, which was to be used by Citibank's auto finance business at its offices in Melville, Long Island. The agreement provided that the software would be produced in South Carolina and then shipped to New York.

Section 6 of the agreement permitted Citibank to conduct "acceptance testing" in order to determine whether the system met contract specifications. Furthermore, Section 6 of the agreement obligated Affinity to correct all nonconformities identified by Citibank in the system.

Sections 15a and 15c of the agreement entitled Affinity to certain specified fees that were due upon the parties' execution of the agreement in November 1997. Section 15j stipulated that Affinity could receive "miscellaneous fees" for additional charges incurred pursuant to other sections of the agreement, but Affinity was first obligated to deliver to Citibank an invoice setting forth the nature and the amount of such charges. If Citibank disputed any invoice, Section 15n of the agreement set forth specific procedures governing the handling of such disputes.

In or about August 1999, Citibank sold the assets of its automobile loan division to the Dime Savings Bank of New York, FSB ("Dime"). As part of this sale, Citibank and Affinity executed an assignment agreement (the "assignment agreement"), in which Citibank assigned to Dime all of Citibank's rights, title and interest in the agreement, and Dime agreed to assume, perform and discharge Citibank's duties and obligations under the agreement. According to the plaintiff, at no time prior to the execution of the assignment agreement did Affinity deliver any invoice to Citibank or inform Citibank of a claim for additional charges.

### C. Procedural History

On or about April 18, 2000, about nine months after the sale to Dime, Affinity commenced an action against Dime in the United States District Court for the District of South Carolina ("Dime action") in connection with the agreement Citibank assigned to Dime. In particular, Affinity claimed that Dime owed Affinity compensation for modifications that Affinity performed under the agreement. In an affidavit by Joseph Boyle ("Boyle"), the president and chief executive officer of Affinity Technology Group, Inc., he stated that Affinity learned for the first time in mediation in December 2000 that Dime had paid Citibank $1 million for the assignment of the system. Boyles asserts in his affidavit that most of the modifications and additional services in dispute

were made prior to the assignment to Dime. In January, 2001, Affinity and Dime resolved the dispute.

Shortly thereafter, Affinity prepared a bill for the amounts due for work performed prior to the assignment to Dime. On or about March 7, 2001, Affinity sent a letter and invoice to Citibank requesting a payment of $3,133,693.75 for additional services Affinity provided under the agreement prior to Citibank's sale to Dime.

On March 29, 2001, Citibank responded by filing a declaratory judgment action against Affinity in the Eastern District of New York claiming that it owed no money to Affinity under the agreement. Affinity moved to dismiss the action on the ground that Citibank failed to engage in the informal dispute resolution required under the agreement, which prohibited judicial action by either party for 40 days after a dispute arose. In January 2002, United States District Judge Jacob Mishler dismissed Citibank's action without prejudice because of Citibank's failure to follow the dispute resolution clause.

On July 19, 2001, before Judge Mishler dismissed the action, Affinity commenced an action against Citibank in the District of South Carolina. In that case, Citibank argued that Affinity had failed to engage in the dispute resolution clause in the agreement. Affinity's action was similarly dismissed without prejudice due to Affinity's failure to abide by the dispute resolution clause.

On May 13, 2002, after the required period in the dispute resolution clause had expired, Affinity filed a second federal court action in South Carolina against Citibank. This action was assigned to United States District Judge Dennis W. Shedd, who presided over the Dime action. Approximately five hours after Affinity filed its action, Citibank filed the present diversity case.

## II. DISCUSSION

### A. First–Filed Rule

Affinity claims that pursuant to the first-filed rule, because it filed the action in South Carolina five hours before Citibank commenced this action, the Court should either dismiss this action or stay the proceedings while the South Carolina action proceeds.

Where two courts have concurrent jurisdiction over an action involving the same parties and issues, the forum of the first suit should have priority. *BuddyUSA, Inc. v. Recording Indus. Assoc.*, No. 01–7761, 21 Fed.Appx. 52, at *55, 2001 U.S.App. LEXIS 21871 (2d Cir. Oct. 11, 2001); *Winterthur Int'l Am. Ins. Co. v. Bank of Montreal,* No. 02 CV 6889, 2002 WL 31521102, at *3, 2002 U.S. Dist. LEXIS 21838, at *7 (S.D.N.Y. Nov. 12, 2002). However, most of the cases in this Circuit have disregarded the first filed rule where the competing suits were filed only days apart. *JewelAmerica v. Frontstep Solutions Group, Inc.,* No. 02 CV 1328, 2002 WL 1349754, at *1 n. 1, 2002 U.S. Dist. LEXIS 10956, at *n. 1 (S.D.N.Y. June 12, 2002) (citing *Elbex Video, Ltd. v. Tecton, Ltd.,* No. 00 CV 0673, 2000 WL 1708189, at *2, 2000 U.S. Dist. LEXIS 16531, at *3 (S.D.N.Y. Nov. 15, 2000)). In this case, given that Affinity filed only five hours before Citibank commenced this action, the Court disregards the first-filed rule and turns to whether Affinity's motion to transfer venue should be granted or denied.

### B. Motion to Transfer Venue

A district court may transfer venue to another court "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). A court will grant a venue transfer when (1) the transferee court was a venue where the action

"might have been brought" originally, and (2) transfer is for the "convenience of parties and witnesses" and in the "interest of justice." *Schertenleib v. Traum*, 589 F.2d 1156, 1161 (2d Cir.1978); *Invivo Research, Inc. v. Magnetic Resonance Equipment*, 119 F.Supp.2d 433, 436 (S.D.N.Y.2000).

In this case, the parties do not dispute that this action could have been brought in South Carolina. Indeed, there is already an identical case pending in South Carolina. Thus, the Court must next analyze the second prong, namely, whether transfer to South Carolina is for the "convenience of the witnesses" and in the "interest of justice."

■ The defendant bears the burden of establishing the propriety of transfer by a clear and convincing showing. *Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir.) *cert. denied*, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950). Furthermore, the defendant must support the motion with affidavits and other materials outside the pleadings. *Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.*, 829 F.Supp. 62, 66 (S.D.N.Y.1993).

■ To determine whether transfer would be appropriate, courts consider the following factors, none of which are dispositive: (1) convenience of the parties; (2) convenience of the witnesses; (3) relative means of the parties; (4) locus of operative facts and relative ease of access to sources of proof; (5) attendance of witnesses; (6) the weight accorded the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (9) practical difficulties; and (10) how best to serve the interest of justice, based on an assessment of the totality of material circumstances. *H.D. Brous & Co., Inc. v. Synthesys Secure Technologies, Inc.*, 229 F.Supp.2d 191, 198 (E.D.N.Y. 2002). Courts have broad discretion in balancing these factors. *Citigroup Inc. v.*

*City Holding Company*, 97 F.Supp.2d 549, 561 (S.D.N.Y.2000).

### 1. Convenience of Parties and Witnesses

■ Courts have held that perhaps the most important consideration is the convenience of party and non-party witnesses in a Section 1404(a) motion. *Invivo Research, Inc.*, 119 F.Supp.2d at 437 (citing *Garrel v. NYLCare Health Plans, Inc. et al.*, No. 98 CV 9077, 1999 WL 459925, at *5 (S.D.N.Y. June 29, 1999)); *see also Hubbell Inc. v. Pass & Seymour, Inc.*, 883 F.Supp. 955, 962 (S.D.N.Y.1995). According to an affidavit by Rogers, at the beginning of 1999, Affinity employed approximately 150 people. However, Rogers states that Affinity currently has only 28 employees and its work force will likely to continue to decline because of its financial difficulties. Rogers states that the costs of a long distance litigation would greatly handicap Affinity's ability to defend itself against Citibank.

Citibank does not argue that it would be unduly burdened by a South Carolina trial. Furthermore, while Affinity resides in South Carolina, Citibank is a large national corporation which conducts business all across the country. As such, convenience of the parties weigh in favor of the defendants.

The Court also finds that convenience of the witnesses weigh in favor of the defendants. Rogers' affidavit states that approximately 73 current and former employees of Affinity are potential witnesses because of their involvement in providing the alleged additional services. This group consists of three current employees and 70 former employees. According to Affinity, the group includes 13 critical witnesses, all of whom reside in or near Columbia, South Carolina, based upon extensive involvement with one or more of the

following: (i) supervising or coordinating completion of the system; (ii) receiving requests for modifications from Citibank's representatives; (iii) estimating the amount of programming hours required to complete each modification requested; and (iv) supervising, coordinating, and making modifications to the system. Affinity has identified these witnesses by name, present location, term of employment with Affinity, and former job title.

In an affidavit, Charles J. Hoffarth ("Hoffarth"), former vice-president and director for Citibank's Auto Finance Group, states that Citibank has 8 important witnesses regarding Citibank's position. The names of each person is identified in the affidavit, and Hoffarth states that most of them currently work for Dime, or Dime's successor banking institution, in Melville, Long Island. Citibank contends that its key witness is Hoffarth and that the remaining individuals are "potentially important nonparty witness."

On balance, the Court finds that the convenience of the witnesses clearly weighs in favor of a transfer because (1) a substantially greater number of critical witnesses reside in South Carolina, and (2) more than 70 potential witnesses reside in South Carolina, while approximately 7 potential witnesses reside in New York.

## 2. Relative Means of the Parties

■ "Where [an economic] disparity between the parties exists, such as an individual plaintiff suing a large corporation, the court may also consider the relative means of the parties in determining whether to transfer." *Hernandez v. Graebel Van Lines,* 761 F.Supp. 983, 989 (E.D.N.Y. 1991). As stated above, Affinity has suffered great financial losses and personnel declines in recent years. According to Rogers' affidavit, Affinity (1) lost $65 million since 1994, (2) was dropped from the Nasdaq for failing to maintain a minimum

bid in the amount of $1, and (3) had a closing stock value on May 15, 2001 of 6.5 cents per share. Furthermore, Rogers states that Affinity sustained losses of more than $729,000 for the first three months of 2001. In support of its position, Affinity has submitted its quarterly report. Rogers also represents that Affinity currently has 28 employees and its workforce is likely to continue to decline, making it especially onerous to litigate a case outside of South Carolina.

On the other hand, Citibank is a national corporation with a huge pool of resources. Citibank's parent company, Citigroup, Inc. reported a net income in the amount of $13.519 billion for the year 2000. Such an economic disparity weighs in favor of changing venue to South Carolina.

## 3. Access to Evidence and Location of Operative Facts

■ Courts look at the location of evidence in a 1404(a) motion when "documents are particularly bulky or difficult to transport, or proof that it is somehow a greater imposition for defendant to bring its evidence to New York than for plaintiff to bring its evidence to the moving party's proposed forum." *Constitution Reinsurance Corp. v. Stonewall Ins. Co.,* 872 F.Supp. 1247, 1251 (S.D.N.Y.1995). Here, Affinity's documents and the equipment that made the system are located in South Carolina, while the actual system is located in New York. Because significant evidence is located in both venues, this factor does not clearly favor either venue.

Similarly, the operative facts in this case are too spread out to clearly favor either venue. According to Citibank, this factor favors venue in New York because (1) Affinity initiated contract negotiations with Citibank in New York and (2) the system was delivered to New York. However, Affinity produced the system in South Car-

olina and the modifications were made in South Carolina. In addition, Citibank traveled to South Carolina to conduct tests on the system. Accordingly, the Court finds that this factor is neutral.

### 4. Ability to Compel the Attendance of Witnesses

■ Affinity contends that it plans to call approximately 75 former and current employees, 13 of whom are critical witnesses who all reside in South Carolina. According to Affinity, many of its former employees may not voluntarily come to New York. However, while this may be true, this factor does not weigh in favor of transfer in light of the option of videotaping testimony of witnesses unwilling to travel. *See* Fed.R.Evid. 804(a)(5); *Citigroup Inc. v. City Holding Co.,* 97 F.Supp.2d 549, 561–62 (S.D.N.Y.2000).

### 5. Plaintiff's Choice of Forum

■ A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless other factors weigh strongly in favor of transfer. *See In re Nematron Corp. Secs. Litig.,* 30 F.Supp.2d 397, 404 (S.D.N.Y.1998); *Berman v. Informix Corp.,* 30 F.Supp.2d 653, 659 (S.D.N.Y.1998). The Court finds that the convenience of the parties and witnesses, as well as the relative means of the parties weigh strongly in favor of transfer. Based on these factors, the Court finds that the plaintiff's choice of forum is not entitled to considerable weight.

### 6. The Forum's Familiarity with Substantive Law

A clause in the agreement provides that it is governed by New York contract law. However, "where an action does not involve complex questions or another state's laws, courts in this district accord little weight to this factor on a motion to transfer." *Merkur v. Wyndham Int'l, Inc.,* No. 00 CV 5843, 2001 WL 477268, at *5, 2001 U.S. Dist. LEXIS 4642, at *5 (E.D.N.Y. 2001) (citing *Vassallo v. Niedermeyer,* 495 F.Supp. 757, 759 (S.D.N.Y.1980)).

Here, Affinity alleges several non-contract claims against the plaintiff (*i.e.,* fraud, breach of implied covenants, negligent misrepresentation and unfair and deceptive trade practices) which are probably governed by South Carolina law. In addition, New York contract law is not overly complex so as to unduly burden the South Carolina court. Finally, the action now pending in South Carolina was assigned to Judge Shedd, who has familiarity with the legal issues and facts of this case because he was the presiding judge in the prior Dime action. Based on these three mitigating factors, the Court finds that the substantive law governing the agreement does not clearly favor either venue.

### 7. Practical Difficulties & Totality of the Circumstances

Based upon the totality of the circumstances, the Court finds that the Affinity has met it burden of demonstrating that transfer to the District of South Carolina would be in the interests of convenience and fairness. Affinity's poor financial standing and the great number of witnesses located in South Carolina tip the scale in favor of a transfer. Moreover, this case is in its infancy stage and no discovery has yet been conducted. Given the identical nature of the claims involved in both suits, the District of South Carolina may be able to consolidate the two cases. These factors weigh in favor of transfer. Furthermore, because the Court has granted the defendants' motion to transfer, the Court need not address Affinity's motion to dismiss for failure to state a claim.

### III. CONCLUSION

Based on the foregoing, it is hereby

ORDERED, that the defendant's motion to transfer venue to the District of South Carolina is **GRANTED;** and it is further

ORDERED, that the Clerk of the Court is directed to close this case.

**SO ORDERED.**